KEVIN TURNER AND WIFE, LARA TURNER, PLAINTIFFS v. DOUGLAS E. ELLIS, DEFENDANT

No. COA05-1527

(Filed 5 September 2006)

### 1. Contracts— construction of house—evidence of contract and damages sufficient

The trial court did not err by denying defendant's motion for a directed verdict or by denying his motion for a judgment n.o.v. in a contract action arising from the construction of a house. There was sufficient evidence of the contract and of damages, viewed in the light most favorable to plaintiffs.

### 2. Contracts— counterclaim—no evidence presented—properly denied

The trial court did not err by granting plaintiff's motion for a directed verdict on defendant's counterclaim in an action arising from the construction of a house where defendant presented no evidence to support his claim.

### 3. Appeal and Error— preservation of issues—assignment of error—not supported by reason and argument

An assignment of error that the jury's verdict and the court's judgment accepting the verdict were erroneous "[f]or the reasons set forth . . . above. . . ." was deemed abandoned for failure to set forth supporting reason or argument.

Appeal by defendant from judgment entered 26 May 2005 and orders entered 29 June 2005 by Judge Ronald K. Payne in Haywood County Superior Court. Heard in the Court of Appeals 15 August 2006.

TURNER v. ELLIS

[179 N.C. App. 357 (2006)]

*Patrick U. Smathers, P.A., by Patrick U. Smathers, for plaintiffs-appellees.*

*Hyler & Lopez, P.A., by George B. Hyler, Jr. and Robert J. Lopez, for defendant-appellant.*

TYSON, Judge.

Douglas E. Ellis ("defendant") appeals from judgment entered after a jury returned a verdict in favor of Kevin Turner ("Turner") and Lara Turner (collectively, "plaintiffs") and from orders granting plaintiffs' motion for directed verdict on defendant's counterclaim, denying defendant's motion for directed verdict and judgment notwithstanding the verdict, and disbursing funds and setting costs. We affirm.

## I.  Background

In 1980, Turner bought a 1.8 acre tract in the Upper Crabtree Community of Haywood County. In 1986, Turner purchased an adjoining parcel. The two parcels combined equaled ten acres. A portion of the property was graded to allow a residence to be built. Turner had served as a church pastor in the Piedmont area and had been given several tobacco barns, which he dismantled and transported to Haywood County. Turner reassembled the pieces into a tobacco barn with the intent to eventually renovate the structure and use it as his home. From 1981 until 1999, the barn was used for storage and occasionally as a campsite.

In 1999, Turner parked a camper on the property and applied for a building permit to prepare the site to construct a permanent residence. A septic system was installed, a well was dug, and temporary electricity was installed.

In 2000, Turner married Lara Gravely. Plaintiffs finalized plans for their residence and began to search for construction financing. Mountain Bank, now known as Carolina First, agreed to provide a construction loan, if plaintiffs hired a general contractor.

In late 2001, Turner attempted to contact defendant, an extended family member and a licensed general contractor. No communication occurred between Turner and defendant until October 2002. Plaintiffs provided house drawings to defendant and later met with defendant at his home to discuss the project. Defendant agreed to serve as general contractor, but stated he did not build log homes. Defendant told

plaintiffs they would have to hire a subcontractor to complete that portion of the job. Defendant recommended Mitchell Langford ("Langford"), an individual he had recently worked with to construct a log home. Defendant showed plaintiffs a house he and Langford had recently built together. Defendant and plaintiffs discussed aspects of the construction, such as materials to be used to construct the residence.

Defendant quoted plaintiffs $185,000.00 as the cost required to build their home. This quote included a $9,000.00 contracting fee. Plaintiffs contracted with Langford to separately complete the log work. Langford recommended plaintiffs obtain blueprints of the house. On 1 November 2002, a copy of the blueprints were given to defendant and Langford with some modifications from plaintiffs' original handwritten plans. No changes were quoted to the original cost to build the home.

Before signing the loan agreement, an itemized construction cost breakdown and a construction timetable of nine to twelve months was presented to plaintiffs by defendant. Mountain Bank issued the loan commitment after plaintiffs and defendant signed a Construction Loan Agreement on 19 November 2002. The parties agreed the cost to build the house was $185,000.00 and would not exceed $225,000.00. Plaintiffs obtained a construction loan for the maximum amount of $225,000.00. Plaintiffs planned to use excess loan funds to reimburse costs expended on the original structure and for sufficient funds for cost overruns and closing fees.

In December 2002, an excavator began to prepare the site and foundation blocks were laid the following May. By September 2003, most of the logs were installed. After October, plaintiffs became frustrated because defendant could not locate a contractor to install the metal roof. Water began to seep into the structure. During late December 2003 and early January 2004, financial difficulties arose and work ceased.

Mountain Bank inspected the property to ensure funds were being expended appropriately as construction progressed. Mountain Bank discovered construction was not progressing at a rate that matched the expenditure of the funds. Mountain Bank informed plaintiffs that no additional loan funds would be advanced due to the level of construction completed. Turner discussed the situation with defendant, who informed him of cost overruns. Turner told defendant that he "couldn't figure that [they] could finish the house with the

amount of money that [he] was borrowing from the bank." Defendant told Turner that he would complete the construction on the house for $105,600.00, if $20,912.97 currently owed was paid. Plaintiffs agreed.

Plaintiffs did not have available funds to finish the project. Plaintiffs returned to Mountain Bank and requested a second construction loan. Plaintiffs and defendant met with officials of Mountain Bank. A document was prepared by defendant itemizing the cost to complete the project. The document contained a clause that stated, "Costs to complete home not to exceed $105,600[.00]." The document was signed by both plaintiffs and defendant. Plaintiffs rolled their first loan into a larger loan totaling $300,000.00. Work resumed on the house after the document was signed.

Plaintiffs demanded a strict accounting of funds being spent. Originally, all invoices approved by defendant would go to Turner and he would write a check to defendant. The check was drawn on an account opened with funds solely to be used for construction.

Plaintiffs changed the method of how payments on invoices would be made. All further invoices were to be submitted directly to Mountain Bank. After submission, an invoice amount would be placed under a certain line item on a document signed by plaintiffs and defendant. Plaintiffs told Mountain Bank that anytime one line item exceeded the amount designated, defendant would have to pull from a different line item so the total cost to complete construction would not exceed $105,600.00. After an invoice was submitted, Mountain Bank would issue payment to defendant.

Styrofoam insulating blocks were installed in preparation for the metal roof and work continued inside the residence. In April 2004, a rainstorm caused significant water damage to the inside of the house. Turner told defendant it was his responsibility to repair the damage. Defendant responded that he was not the general contractor and that he had only agreed to help them. This was the first time defendant stated he was not the general contractor for the construction. Defendant issued Turner an invoice for $14,348.00 over the revised maximum cost. Plaintiffs wrote defendant a letter which discussed the water damage to the house and plaintiffs' expectations for defendant to prevent additional water damage in the future. The letter referred to their agreement that the cost to complete the house would not exceed $105,600.00.

Plaintiffs and defendant met to discuss the letter. Defendant gave Wayne Miller's ("Miller") telephone number to plaintiffs and told them

Miller could install the roof, but defendant "wasn't going to have anything to do with it." Defendant stated he would meet with plaintiffs to discuss how to finish the house at the agreed cost. Defendant did not appear at the meeting. Plaintiffs were later served with a $27,000.00 lien on their house filed by defendant. Plaintiffs had no further contact with defendant after the lien was filed. All work on the house ceased.

Plaintiffs attempted to find another general contractor to finish the job. Mountain Bank gave Turner permission to finish it himself. Plaintiffs received an unsecured loan for $91,000.00. Turner found construction crews who would perform different tasks and performed some of the work himself. In September 2004, plaintiffs received a Certificate of Occupancy from Haywood County. After plaintiffs received the Certificate of Occupancy, they were able to close a final loan with Mountain Bank totaling $403,000.00. Plaintiffs continued to complete construction until funds were depleted. The construction work was not fully completed according to the plans.

Plaintiffs filed a complaint seeking damages for breach of contract and negligence. A jury trial was held on 23 and 24 May 2005. At the conclusion of the evidence, the trial court granted defendant's motion for directed verdict for plaintiffs' negligence claim, denied defendant's motion for directed verdict for plaintiffs' contract claim, and granted plaintiffs' motion for directed verdict for defendant's counterclaim. The jury returned a verdict for plaintiffs and awarded $131,031.00 in damages and judgment was entered thereon. Defendant's motion for judgment not withstanding the verdict was denied. Defendant appeals.

## II. Issues

Defendant argues the trial court erred by: (1) denying his motions for directed verdict at the close of the evidence and for judgment not withstanding the verdict for plaintiffs' contract claim; (2) granting plaintiffs' motion for directed verdict for defendant's counter claim; (3) accepting the jury's verdict and entering judgment thereon; and (4) ordering a disbursement of funds and setting costs for the verdict and judgment.

## III. Standard of Review

The standard of review of directed verdict is whether the evidence, taken in the light most favorable to the non-moving party,

is sufficient as a matter of law to be submitted to the jury. When determining the correctness of the denial for directed verdict or judgment notwithstanding the verdict, the question is whether there is sufficient evidence to sustain a jury verdict in the non-moving party's favor, or to present a question for the jury. Where the motion for judgment notwithstanding the verdict is a motion that judgment be entered in accordance with the movant's earlier motion for directed verdict, this Court has required the use of the same standard of sufficiency of evidence in reviewing both motions.

*Davis v. Dennis Lilly Co.*, 330 N.C. 314, 322-23, 411 S.E.2d 133, 138 (1991) (internal citations and quotations omitted).

## IV. Breach of Contract

### A. Directed Verdict

[1] Defendant argues the trial court's denial of his motion for directed verdict at the conclusion of all the evidence is prejudicial error. We disagree.

"The party moving for a directed verdict bears a heavy burden in North Carolina. The court should deny a motion for directed verdict when there is more than a scintilla to support plaintiffs' prima facie [sic] case." *Edwards v. West*, 128 N.C. App. 570, 573, 495 S.E.2d 920, 923 (internal quotations and citations omitted), *cert. denied*, 348 N.C. 282, 501 S.E.2d 918 (1998). A *prima facie* case for breach of contract is shown by the existence of a valid contract and breach thereof. *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000).

"A valid contract may arise only where the parties assent and their minds meet as to all terms. This meeting of the minds requires an offer and acceptance of the same terms." *Walker v. Goodson Farms Inc.*, 90 N.C. App. 478, 486, 369 S.E.2d 122, 126 (internal citations and quotations omitted), *disc. rev. denied*, 323 N.C. 370, 373 S.E.2d 556 (1988). A contract may be "express or implied, executed or executory . . . ." *Overall Co. v. Holmes*, 186 N.C. at 428, 431, 119 S.E. 817, 818 (1923). "The focus of the court's inquiry in construing a contract . . . is the intention of the parties, which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time." *Krickhan v. Krickhan*, 34 N.C. App. 363, 366, 238 S.E.2d 184, 186 (1977) (internal citations and quotations omitted).

Defendant argues insufficient evidence was presented of the existence of a contract between him and plaintiffs to submit the issue to the jury. Plaintiffs offered evidence that in October 2002, they met with defendant and showed him drawings of the house they wanted defendant to build. Defendant agreed to be the general contractor to construct plaintiffs' house, if someone else would perform the log work. During this meeting, defendant told plaintiffs he would build the house for $185,000.00. Plaintiffs agreed.

Defendant signed loan documents as plaintiffs' contractor and began construction. Not every detail in the construction of the house was specified in the plans. However, "the contract need not definitely and specifically contain in detail every fact to which the parties are agreeing. It is sufficient if the terms can be made certain by proof." *Sides v. Tidwell*, 216 N.C. 480, 483, 5 S.E.2d 316, 318 (1939). On two occasions, defendant presented plaintiffs with a construction cost breakdown which itemized the costs of construction. Plaintiffs also gave defendant a list of the materials and fixtures to be used.

Defendant also argues plaintiffs failed to present sufficient evidence to submit the issue of damages to the jury. This Court has stated:

> where the plaintiff's evidence establishes a *prima facie* case of breach of contract, a motion for directed verdict is properly denied irrespective of the evidence of damage. Such cases should be submitted to the jury because where plaintiff proves breach of contract he is entitled at least to nominal damages.

*Liss of Carolina, Inc. v. South Hills Shopping Center, Inc.*, 85 N.C. App. 258, 260, 354 S.E.2d 549, 550 (1987) (internal citations and quotations omitted). Plaintiffs presented sufficient evidence of damages by the total amount of funds that flowed through their construction checking account and were distributed by Mountain Bank, and additional expenditures paid from plaintiffs' personal checking accounts and credit cards.

Viewed in a light most favorable to plaintiffs, evidence of the actions and conduct of plaintiffs and defendant are sufficient evidence of the existence of a contract and damages to survive defendant's motion for directed verdict. *Davis*, 330 N.C. at 322-23, 411 S.E.2d at 138. The trial court properly denied defendant's motion for directed verdict. This assignment of error is overruled.

## B.  Judgment Notwithstanding the Verdict

Defendant argues the trial court's denial of his motion for judgment notwithstanding the verdict is prejudicial error. We disagree.

"A motion for judgment notwithstanding the verdict is essentially a renewal of the motion for directed verdict, and the same standard of review applies to both motions." *Zubaidi v. Earl L. Pickett Enterprises, Inc.*, 164 N.C. App. 107, 119, 595 S.E.2d 190, 197, *disc. rev. denied*, 359 N.C. 76, 605 S.E.2d 151 (2004). As we have held, the trial court properly denied defendant's motion for directed verdict. The trial court also properly denied defendant's motion for judgment notwithstanding the verdict. This assignment of error is overruled.

## V.  Defendant's Counterclaim

[2] Defendant argues the trial court erred in granting plaintiffs' motion for directed verdict for his counterclaim. We disagree.

Defendant filed a counterclaim seeking damages for work performed for which he had not been paid. Defendant failed to present any evidence to support his counterclaim at trial. Defendant argues, "there is no reason why a party should be prohibited from being successful on a counterclaim when a Plaintiff in his own case in chief establishes all the elements of the Defendant's counterclaim."

Defendant carries the burden of proving his counterclaim. *Durham Lumber Co., Inc. v. Wrenn-Wilson Construction Co.*, 249 N.C. 680, 685, 107 S.E.2d 538, 541 (1959). In *Adams v. Beasley*, the defendant seller entered into contract with the plaintiffs-buyers to convey a certain piece of property. 174 N.C. 118, 119, 93 S.E. 454, 455 (1917). The defendant conveyed the property to a third party, making it impossible for him to perform the contract entered into with the plaintiffs. *Id.* The defendant admitted the plaintiffs' allegations and alleged a counterclaim. *Id.* The defendant offered no evidence to support his counterclaim and contended the plaintiffs carried the burden of proof. *Id.* The plaintiffs argued the burden rested with the defendant. Judgment was rendered in favor of the plaintiffs. *Id.* Our Supreme Court held, the "defendant was not entitled to recover upon his counter-claim or to diminish the amount of the recovery by the plaintiff without furnishing evidence in support of his allegation . . . ." *Id.*

Here, defendant presented no evidence to support the allegations in his counterclaim. The trial court properly granted plaintiffs' motion

for directed verdict on defendant's counterclaim. This assignment of error is overruled.

**[3]** By his third assignment of error, defendant argues the jury's verdict in favor of plaintiffs and the trial court's judgment accepting such verdict was erroneous. In his argument, defendant merely states, "For the reasons set forth in Argument I and Argument II above, the verdict and the judgment accepting such verdict was erroneous and are to be set aside and vacated." Because defendant has set forth "no reason or argument" in support of his assignment of error, it is deemed abandoned. N.C.R. App. P. 28(b)(6) (2006). In light of our holding, it is unnecessary to consider defendant's assignment of error regarding disbursement of funds and setting costs.

## VI.  Conclusion

The trial court properly denied defendant's motions for directed verdict and judgment notwithstanding the verdict. Plaintiffs presented sufficient evidence of the existence of a contract and damages to submit the issue to the jury.

The trial court properly granted plaintiffs' motion for directed verdict for defendant's counterclaim. The burden of proof rested upon defendant to prove his counterclaim. Defendant chose not to present any evidence in support of his claim. The trial court's order is affirmed.

Affirmed.

Judges WYNN and HUDSON concur.