NORTH CAROLINA INDUSTRIAL CAPITAL, LLC, PLAINTIFF v. JOHN E. CLAYTON, JR., INDIVIDUALLY AND D/B/A WEST'S CHARLOTTE METRO MOVING & STORAGE; DAVID D. RUSHING, INDIVIDUALLY AND D/B/A WEST'S CHARLOTTE METRO MOVING & STORAGE; BERTRAM ALEXANDER BARNETTE, III, A/K/A TREY BARNETTE, INDIVIDUALLY AND D/B/A WEST'S CHARLOTTE METRO MOVING & STORAGE; W. BUFF CLAYTON, INDIVIDUALLY AND D/B/A WEST'S CHARLOTTE METRO MOVING & STORAGE; AND WEST'S CHARLOTTE TRANSFER & STORAGE, INC., DEFENDANTS

No. COA06-732

(Filed 21 August 2007)

### 1. Landlord and Tenant— commercial lease—damages—question for jury

The trial court did not err in an action involving a commercial lease by denying defendant's motions for a directed verdict and judgment n.o.v. in an action to determine damages. The evidence

and documentation provided more than a scintilla of evidence to support the assertion that plaintiff's claims were exaggerated.

**2. Landlord and Tenant— payments to clerk—applicability of lease late fee provisions**

The trial court did not err by deciding that plaintiff was not entitled to late fees where there was a dispute under a commercial lease, defendant made payments to the Clerk of Court, and plaintiff argued that the payments from the Clerk were not timely under the terms of the lease. The lease terms regarding late fees were not applicable because the Clerk's order satisfied the statutory requirements for an "undertaking" on defendant's part. N.C.G.S. § 42-34(b).

**3. Landlord and Tenant— disputed lease amounts—payment to clerk—prejudgment interest**

Defendant's payment of certain disputed lease amounts did not stop the running of interest, and the trial court did not err by awarding prejudgment interest, where the payments were required by the Clerk to stay execution of a summary ejectment and were not tenders of payment to plaintiff.

**4. Attorneys— fees—commercial lease—basis for calculation**

The trial court did not err in its calculation of attorney fees in an action involving a commercial lease where the court used the amount of damages as determined by the jury to calculate those fees.

**5. Attorneys— fees—commercial lease and ejectment—no fees in ejectment action**

The trial court did not abuse its discretion by not awarding attorney fees in an underlying summary ejectment action arising from a commercial lease where plaintiff argued that the ejectment claim was reasonably related to the breach of contract action for which the court awarded fees. While it has been held that the court may award fees when a reasonable relationship between the proceedings is proved, the court is not required to award fees and the burden is on the claimant to present evidence that the other proceedings are reasonably related.

**6. Costs— attorney fees denied as costs—breach of lease**

The trial court did not err by failing to award attorneys' fees as costs under N.C.G.S. § 6-20 in an action involving an ejectment under a commercial lease.

**7. Judgments— findings and conclusions—not required for de novo review**

It was not necessary for the trial judge to make findings of fact and conclusions of law in denying plaintiff's motion for judgment notwithstanding the verdict and for a new trial. Review is de novo; findings of fact and conclusions will not aid the review and are not required.

**8. Appeal and Error— presentation of issues—multiple orders**

Defendants' argument was dismissed where they did not follow the proper procedure to have the merits of their argument considered. They did not appeal from a trial court order dismissing their appeal following their failure to perfect appeal or petition for certiorari, but instead purported to appeal from an earlier order striking defenses. They also did not present an argument in their brief addressing their assignment of error to the denial of a motion to set aside the order striking their defenses.

**9. Landlord and Tenant— commercial lease—ejectment and breach of contract—res judicata**

Defendant Clayton's dismissal with prejudice in an ejectment action did not operate as res judicata or collateral estoppel on his liability in a breach of contract case. The summary ejectment statute specifically allows a lessor to bring an action to regain possession of the premises separate from an action for damages; the disposition of the underlying case would have no res judicata or collateral estoppel effect on plaintiff's subsequent suit for recovery of damages. Furthermore, although the defenses were pled, they were struck by the court and have no application here.

**10. Evidence— hearsay—lease—damages—business records exception**

The trial court did not err in an action arising from a commercial lease by admitting testimony from the person responsible for the management of the premises about the extent of damages incurred by plaintiff. Although defendants contend that the witness had no personal knowledge of the matters to which he was testifying, the witness was referring to documents from plaintiff's file and it is clear that the documents were admissible under the business records exception to the hearsay rule.

Appeal by Plaintiff from judgment entered 23 March 2005 and order entered 30 November 2005 by Judge W. Robert Bell in Mecklenburg County Superior Court. Appeal by Defendants from or-

ders entered 11 April 2003 and 19 October 2004 by Judge Yvonne Mims Evans in Mecklenburg County Superior Court and from judgment entered 23 March 2005 by Judge W. Robert Bell in Mecklenburg County Superior Court. Heard in the Court of Appeals 24 January 2007.

*Koehler & Cordes, PLLC, by Stephen D. Koehler, for Plaintiff.*

*Law Offices of Dale S. Morrison, by Dale S. Morrison, for Defendants.*

STEPHENS, Judge.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a June 1999 lease of commercial property in Charlotte, North Carolina, between Plaintiff and its lessee, Defendant West's Charlotte Transfer & Storage, Inc. ("WCT"). On 15 August 2001, Plaintiff filed a complaint in Mecklenburg County small claims court seeking summary ejectment against David D. Rushing ("Rushing") and John Clayton ("Clayton"), allegedly doing business as West's Charlotte Metro Moving & Storage. On 4 October 2001, the court entered judgment in favor of Plaintiff against Rushing and West's Charlotte Metro Moving & Storage. The court dismissed Clayton from the suit with prejudice. Rushing appealed to district court, where his motion to dismiss himself as a party and to add the actual lessee, Defendant WCT, was allowed.

On 9 April 2002, Plaintiff filed a motion in Mecklenburg County District Court for summary judgment against Defendant WCT in the ejectment case. The court granted Plaintiff's motion for possession of the property on 14 May 2002. Defendant WCT appealed to this Court from this order.[1] Pending this appeal, the Mecklenburg County Clerk of Superior Court issued an order requiring Defendant WCT to pay into the Clerk's office $11,719.77 monthly to stay the district court's judgment. This sum represented base rent and other common area expense amounts due under the lease. The Clerk's office forwarded payment to Plaintiff, less $2,200.00 per month which represented the portion of the monthly payment Defendant WCT disputed. Defendant WCT contested a portion of the common area operating expenses Plaintiff alleged was owed. At the time this case was heard by the trial

---

1. In an unpublished opinion this Court affirmed the trial court's grant of summary judgment in the ejectment proceeding. *N.C. Indus. Capital, LLC v. Rushing*, 163 N.C. App. 204, 592 S.E.2d 620 (unpublished) (COA03-274) (Mar. 2, 2004).

court, the amount withheld by the Clerk totaled $48,400.00 in contested expenses.

On 13 June 2002, Plaintiff filed a complaint in Mecklenburg County Superior Court against the individual Defendants[2] and WCT seeking monetary damages for breach of the lease. Plaintiff also sought to "pierce the corporate veil" against the individual Defendants, claiming, *inter alia*, that the individual Defendants

> are and have always been the sole shareholders and officers of West's[,] . . . commingled their own funds with those of West's[,] . . . caused West's to be inadequately capitalized[,] . . . so dominated and controlled West's as to make the corporation their alter-ego, . . . caused distributions to be made from West's which have caused the corporation to be unable to pay its debts as they come due in the usual course of business[,] [and that] . . . the total assets of [West's] did not exceed total liabilities after the distributions occurred.

Plaintiff sought "damages in an amount in excess of $373,000.00, plus attorney's fees and interest at the maximum legal rate from the date of the breach until paid." On 6 September 2002, Defendants filed an answer to Plaintiff's complaint. In their answer, Defendants moved to dismiss the suit against the individual Defendants because "they have never entered into possession of the premises." Defendants also asserted that the only amounts "due and owing to Plaintiff are the remaining amounts of common area operating expenses that are an issue in the first lawsuit . . . [and that] Plaintiff's claim for $300,000.00 for actual consequential and incidental damages has no factual basis and should be dismissed." Finally, Defendants pled that the funds of WCT and the individual Defendants were never commingled and that WCT was not "an alter-ego and a mere instrumentality for the individual Defendants."

On 11 September 2002, Plaintiff served on Defendants a set of interrogatories and requests for production of documents. On 4 October 2002, Defendants moved to enlarge the time to respond to Plaintiff's discovery requests and, that same day, an order was entered enlarging the response time to 13 November 2002. Defendants nevertheless failed to respond and, on 10 December 2002, Plaintiff moved to compel responses.

---

2. In addition to Rushing and Clayton, Plaintiff named Bertram Alexander (Trey) Barnette, III, and W. Buff Clayton, individually and doing business as West's Charlotte Moving and Storage, as Defendants in this civil action.

By order filed 2 February 2003, the Honorable Robert P. Johnston ordered Defendants to answer the interrogatories and respond to the requests for production of documents on or before 21 February 2003. Defendants did not comply with Judge Johnston's order and, on 3 March 2003, Plaintiff moved for sanctions. The motion for sanctions was heard before the Honorable Yvonne Mims Evans on 9 April 2003. By order entered 11 April 2003, Judge Evans struck "those portions of each Defendants' [sic] Answer which constitute a defense to or denial of liability to the Plaintiff[.]" She further ordered that the civil action "shall proceed to judgment solely on the issue of the amount of damages to be awarded to Plaintiff[.]"

On 9 May 2003, Defendants gave notice of appeal from Judge Evans's order. However, Defendants failed to timely perfect their appeal and, on 15 October 2003, Plaintiff moved to dismiss. By order filed 3 November 2003, the Honorable David S. Cayer dismissed Defendants' appeal. Defendants did not appeal from Judge Cayer's order.

On 17 September 2004, Defendants moved to vacate Judge Evans's order striking portions of their answer. By order filed 19 October 2004, Judge Evans denied Defendants' motion to vacate. The case then proceeded to trial between 4 and 6 January 2005 before the Honorable W. Robert Bell on the sole issue of the amount of damages Plaintiff was entitled to receive for breach of its lease. Following Judge Bell's denial of Plaintiff's motion for directed verdict at the close of the evidence, the jury awarded Plaintiff $101,830.38 in actual, consequential, and incidental damages. Based on this verdict Judge Bell entered judgment against Defendants on 23 March 2005 in the amount of $101,830.38, with "prejudgment interest at the maximum legal rate from June 9, 2001 [date of breach of the lease] to date of this Judgment on the amount of $53,430.38[,]"[3] and "an award of attorneys['] fee in the amount of $15,274.55 representing 15% of the $101,830.38 amount the jury determined to be the outstanding balance [owed under the lease]."

On 4 April 2005, Plaintiff moved for judgment notwithstanding the verdict, seeking damages in the amount alleged in its complaint, or in the alternative a new trial. On 2 November 2005, pursuant to Rule 52(a)(2) of the North Carolina Rules of Civil Procedure, Plaintiff requested that the trial court make findings of fact and conclusions of law in ruling on its 4 April 2005 motion. By order entered 30

---

3. The amount on which Judge Bell awarded prejudgment interest represents the jury's verdict less the undisbursed sum of $48,400.00 which Defendant WCT paid into the Clerk's office in the summary ejectment action.

November 2005, Judge Bell denied Plaintiff's motion for judgment notwithstanding the verdict or new trial, without making findings of fact or conclusions of law.

On 29 December 2005, Plaintiff filed notice of appeal from Judge Bell's judgment entered 23 March 2005 and his order of 30 November 2005. On 30 December 2005, Defendants filed notice of appeal from Judge Evans's 11 April 2003 order striking portions of Defendants' answer, Judge Evans's 19 October 2004 order denying Defendants' motion to vacate the 11 April 2003 order, and Judge Bell's 23 March 2005 judgment. We affirm Judge Evans's orders and uphold the judgment for Plaintiff, but remand for an additional award of interest and an order containing findings of fact and conclusions of law regarding Plaintiff's motion for a new trial.

## II. PLAINTIFF'S APPEAL

### A. DIRECTED VERDICT AND JUDGMENT NOTWITHSTANDING THE VERDICT

[1] By its first argument, Plaintiff contends the trial court erred in failing to grant its motions for directed verdict and judgment notwithstanding the verdict. Specifically, Plaintiff argues that because "the lease itself was unambiguous and the evidence was uncontroverted, [the amount due under the lease] was not a factual issue that required jury determination[,]" and thus, Plaintiff was entitled to judgment as a matter of law in the amount of $154,340.55, plus prejudgment interest, attorneys' fees, and costs. We disagree.

> The standard of review of directed verdict is whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury. When determining the correctness of the denial for directed verdict or judgment notwithstanding the verdict, the question is whether there is sufficient evidence to sustain a jury verdict in the non-moving party's favor, or to present a question for the jury. Where the motion for judgment notwithstanding the verdict is a motion that judgment be entered in accordance with the movant's earlier motion for directed verdict, this Court has required the use of the same standard of sufficiency of evidence in reviewing both motions.

*Davis v. Dennis Lilly Co.*, 330 N.C. 314, 322-23, 411 S.E.2d 133, 138 (1991) (internal citations and citations omitted). Generally, when there is more than a scintilla of evidence to support the non-movant's

claim or defense, a motion for directed verdict and thus a motion for judgment notwithstanding the verdict should be denied. *Turner v. Ellis*, 179 N.C. App. 357, 633 S.E.2d 883 (2006), *disc. review denied*, 361 N.C. 370, 644 S.E.2d 564 (2007).

In this case, though Plaintiff offered documentary evidence supporting its claim for damages, the evidence on which Plaintiff relied and the amount of damages alleged by Plaintiff were in dispute. During his testimony, Defendant Rushing stated that Defendants contested some of the common expenses for which Defendant WCT was charged because they "had issues with the property management [fee of $24,175.00 for the year 2000] that was being charged[.]" Defendants also believed Defendant WCT was being charged "an exorbitant amount" for repairs to the premises. Furthermore, Rushing testified that Defendant WCT was charged for repairs to the parking lot and roadway but that the repairs were not of a high quality. "It was a poor job that was done. There was [sic] raises in the pavement, there were areas all throughout the whole parking lot where you could see that it just wasn't a good job that was done by this company." Additionally, Rushing testified that there were holes and cracks in the pavement that appeared "all over the parking lot shortly after the paving job was done." In support of Rushing's testimony, Defendants offered in evidence photographs of the parking lot documenting the holes and cracks that appeared after the repairs were completed.

This testimony and documentation provides more than a scintilla of evidence supporting Defendants' assertion that Plaintiff's claims for damages were exaggerated. Accordingly, the question of the extent of Plaintiff's damages was for the jury to determine, and thus, the trial court did not err in denying Plaintiff's motion for directed verdict. Similarly, because the standard of review is the same, the trial court did not err in denying Plaintiff's motion for judgment notwithstanding the verdict. Plaintiff's argument is therefore overruled.

## B. CONTRACTUAL LATE FEES

[2] Plaintiff next argues the trial court erred in ruling that Plaintiff was not entitled to contractual late fees on sums that Defendant WCT paid to the Mecklenburg County Clerk of Superior Court. Plaintiff contends the Clerk lacked authority to issue an order superceding the terms of the original lease and, because Defendant WCT failed to make payments under the Clerk's order in a manner which would allow timely payment to Plaintiff pursuant to the provisions of its

lease, the trial court erred in failing to award late fees required by the lease. Again, we disagree.

As noted *supra*, after the district court granted summary judgment in favor of Plaintiff in the ejectment action, Defendant WCT appealed to this Court. Pursuant to section 42-34.1 of our General Statutes, "[i]f the judgment in district court is against the defendant appellant and the defendant appellant appeals the judgment, it shall be sufficient to stay execution of the judgment if the defendant appellant posts a bond as provided in G.S. 42-34(b)." N.C. Gen. Stat. § 42-34.1(b) (2005). Section 42-34(b) provides that

> it shall be sufficient to stay execution of a judgment for ejectment if the defendant appellant pays to the clerk of superior court any rent in arrears . . . and signs an undertaking that he or she will pay into the office of the clerk of superior court the amount of the tenant's share of the contract rent as it becomes due periodically after the judgment was entered[.]

N.C. Gen. Stat. § 42-34(b) (2005). This section provides further that

> [a]ny magistrate, clerk, or district court judge shall order stay of execution upon the defendant appellant's paying the undisputed rent in arrears to the clerk and signing the undertaking. *If either party disputes the amount of the payment or the due date in the undertaking, the aggrieved party may move for modification of the terms of the undertaking before the clerk of superior court or the district court.* Upon such motion and upon notice to all interested parties, the clerk or court shall hold a hearing within 10 calendar days of the date the motion is filed and determine what modifications, if any, are appropriate.

*Id.* (Emphasis added.) An undertaking is a "promise, pledge, or engagement." *Black's Law Dictionary* 1562 (8th ed. 2004).

In this case, in order to stay the judgment of the district court pending Defendant WCT's appeal of the court's summary ejectment order, on 19 August 2002, the Mecklenburg County Clerk of Superior Court ordered Defendants to pay "to the Clerk's office . . . $11,719.77, on or before the 5th day of each month (or next business day if the 5th day of each month falls on a Saturday, Sunday or a court holiday)." This sum represented base rent and other common area expense amounts due under the lease. The order filed by the Clerk substantially complied with N.C. Gen. Stat. § 42-34 because it determined the amount Defendant WCT owed in arrears, the amount of

**N.C. INDUS. CAPITAL, LLC v. CLAYTON**

[185 N.C. App. 356 (2007)]

prospective monthly rent, and the dates upon which the monthly rent was due to the Clerk's office. Further, the Clerk ordered that the stay of the summary ejectment judgment would be dissolved if Defendant WCT failed to make timely payments. Upon receipt of these payments, the Clerk's office disbursed to Plaintiff the amount of monthly fees owed under the lease ($11,719.77), less the expenses contested by Defendants ($2,200.00). Plaintiff does not contend that WCT failed to make payments timely under the terms of the Clerk's order, only that such payments were not timely under the terms of the lease.

There is no evidence before us that Defendant WCT signed an "undertaking" to make payments required by the Clerk's order as contemplated by the statute. However, based on Defendant WCT's compliance with the order and the absence of evidence demonstrating that Plaintiff or WCT objected to its terms, we conclude that both Plaintiff and WCT intended to be bound by the order, and that the order satisfied the statutory requirements for an "undertaking" on WCT's part.[4] Thus, the lease terms regarding late fees were no longer applicable. Additionally, although Plaintiff contends it was harmed because the payments it received were late under the terms of the lease, there is no evidence that Plaintiff made a motion to the Clerk to have the payment date changed, as was Plaintiff's right under N.C. Gen. Stat. § 42-34(b). Accordingly, the trial court did not err in determining that Plaintiff was not entitled to late fees. This argument is overruled.

## C. PREJUDGMENT INTEREST

[3] By its third argument, Plaintiff contends the trial court erred by denying Plaintiff prejudgment interest on the monthly payments of $2,200.00 withheld by the Mecklenburg County Clerk of Superior Court pending this litigation.[5] We agree.

Section 24-5 of our General Statutes provides in relevant part that, in an action for breach of contract, "the amount awarded on the contract bears interest *from the date of breach*." N.C. Gen. Stat. § 24-5(a) (2005) (emphasis added). " 'Interest is the compensation

---

4. Our research reveals no reported appellate cases interpreting this provision of N.C. Gen. Stat. § 42-34. We note, however, and are persuaded by an opinion of the Attorney General determining that the only undertaking the General Assembly intended to require of a summary ejectment defendant is the rent undertaking (*i.e.*, past and prospective payments) which such defendant must make to stay execution of the ejectment order when the defendant appeals. 1995 N.C.A.G. fop12 (February 10, 1995).

5. When this case was heard by the trial court, the Clerk had withheld $48,400.00 in contested expenses.

allowed by law, or fixed by the parties, for the use, or forbearance, or detention of money.' " *Parker v. Lippard*, 87 N.C. App. 43, 49, 359 S.E.2d 492, 496 (1987) (quoting *Ripple v. Mortgage & Acceptance Corp.*, 193 N.C. 422, 424, 137 S.E. 156, 157 (1927)). "Put simply, interest . . . means compensation allowed by law as additional damages for the *lost use of money* during the time between the accrual of the claim and the date of the judgment." *Members Interior Constr., Inc. v. Leader Constr. Co.*, 124 N.C. App. 121, 125, 476 S.E.2d 399, 402 (1996) (quotation marks and citations omitted), *disc. review denied*, 345 N.C. 754, 485 S.E.2d 56 (1997).

A judgment is "the final amount of money due to the plaintiff, consisting of the verdict, costs, fees, and interest." *Brown v. Flowe*, 349 N.C. 520, 522, 507 S.E.2d 894, 896 (1998) (citations omitted). "[A] valid tender of payment for the full amount, plus interest to date, will be effective to stop the running of interest . . . ." *Thompson-Arthur Paving Co. v. Lincoln Battleground Assoc., Ltd.*, 95 N.C. App. 270, 282, 382 S.E.2d 817, 824 (1989) (citation omitted). However, "unconditional payment offers are, by definition, not tender offers as tender offers are made in full and final settlement of a claim[.]" *Members*, 124 N.C. App. at 125, 476 S.E.2d at 403 (citations omitted).

In this case, Defendant WCT's monthly payments to the Clerk of the contested $2,200.00 were not valid tenders of payment to Plaintiff. Rather, these payments were part of the undertaking required by the Clerk to stay execution of the summary ejectment judgment against Defendant WCT. Because (1) the payments did not include interest and were not a final settlement of the claim, and (2) Plaintiff was deprived of the use of this money during the period it was retained by the Clerk, Defendant WCT's payment of the disputed amount to the Clerk did not stop the running of interest. *See id.*; *see also Thompson-Arthur*, *supra*. Accordingly, the trial court erred in not awarding prejudgment interest on the $48,400.00 withheld by the Clerk.

## D. ATTORNEYS' FEES

[4] Next, Plaintiff argues the trial court erred in calculating the amount of attorneys' fees due Plaintiff from Defendants. This argument is without merit.

The trial court awarded Plaintiff $15,274.55 in attorneys' fees, based on a calculation of fifteen percent of $101,830.38, the amount that the jury determined to be the outstanding balance due on the lease of the property. Citing N.C. Gen. Stat. § 6-21.2, Plaintiff argues

the trial court erroneously used the amount of damages as determined by the jury to calculate the attorneys' fees when, instead, the court should have awarded attorneys' fees under the "time price balance" method set out in the statute.

Section 6-21.2 of our General Statutes provides in relevant part as follows:

Obligations to pay attorneys' fees upon any note, conditional sale contract or other evidence of indebtedness, in addition to the legal rate of interest or finance charges specified therein, shall be valid and enforceable, and collectible as part of such debt, if such note, contract or other evidence of indebtedness be collected by or through an attorney at law after maturity, subject to the following provisions:

(1) If such note, conditional sale contract or other evidence of indebtedness provides for attorneys' fees in some specific percentage of the "outstanding balance" as herein defined, such provision and obligation shall be valid and enforceable up to but not in excess of fifteen percent (15%) of said "outstanding balance" owing on said note, contract or other evidence of indebtedness.

(2) If such note, conditional sale contract or other evidence of indebtedness provides for the payment of reasonable attorneys' fees by the debtor, without specifying any specific percentage, such provision shall be construed to mean fifteen percent (15%) of the "outstanding balance" owing on said note, contract or other evidence of indebtedness.

(3) As to notes and other writing(s) evidencing an indebtedness arising out of a loan of money to the debtor, the "outstanding balance" shall mean the principal and interest owing at the time suit is instituted to enforce any security agreement securing payment of the debt and/or to collect said debt.

(4) As to conditional sale contracts and other such security agreements which evidence both a monetary obligation and a security interest in or a lease of specific goods, the "outstanding balance" shall mean the "time price balance" owing as of the time suit is instituted by the

secured party to enforce the said security agreement
and/or to collect said debt.

N.C. Gen. Stat. § 6-21.2 (2005).

The lease[6] between the parties here provides:

If any Party or Broker brings an action or proceeding to en-
force the terms hereof or declare rights hereunder, the Prevailing
Party . . . [i]n any such proceeding, action, or appeal thereon,
shall be entitled to reasonable attorneys' fees. . . . The attorneys'
fee award shall not be computed in accordance with any court fee
schedule, but shall be such as to fully reimburse all attorneys'
fees reasonably incurred.

The terms of the lease contemplate a recovery of all attorneys'
fees by Plaintiff. However, section 6-21.2 limits recovery to fifteen
percent of the "outstanding balance" owing on the lease. Plaintiff con-
tends the "outstanding balance" under the lease is the amount of dam-
ages sought in its complaint, *i.e.*, the amount owed on the lease at the
time suit was filed, not the amount awarded by the jury. We disagree.
Because Defendants presented testimonial and documentary evi-
dence that raised doubts about the extent of Plaintiff's damages
under the contract, the "outstanding balance" due under the lease
was a question for the jury. *See G. L. Wilson Bldg. Co. v. Thorneburg
Hosiery Co.*, 85 N.C. App. 684, 688, 355 S.E.2d 815, 818 ("The 'out-
standing balance' due on the contract . . . consists of the amount
awarded by the arbitrator for any of the items requested . . . .), *disc.
review denied*, 320 N.C. 798, 361 S.E.2d 75 (1987).

Plaintiff argues further, however, that the jury's verdict "was a
measure of damages due for the breach of the lease, not a measure of
the outstanding balance to be used for determination of allowable
attorney's fees under N.C.G.S. § 6-21.2." Therefore, according to
Plaintiff, the trial court should have used the "time price balance"
method as described by subparagraph (4) of section 6-21.2 to deter-
mine the "outstanding balance" due on its lease and awarded attor-
neys' fees based on that calculation. This argument ignores the plain
language of the statute which unambiguously limits the "time price
balance" method of determining the "outstanding balance" of indebt-
edness to "conditional sale contracts and other such security agree-
ments which evidence both a monetary obligation and a security

6. Our appellate courts have held that a lease of real property is "evidence of
indebtedness" under section 6-21.2. *See, e.g., WRI/Raleigh, L.P. v. Shaikh*, 183 N.C.
App. 249, 644 S.E.2d 245 (2007).

interest in or a lease of *specific goods*[.]" N.C. Gen. Stat. § 6-21.2(4) (emphasis added). Since the contract at issue in this case concerns the lease of real property and not goods, this provision of the statute is inapplicable here. Furthermore, it is clear to us that because the lease is for real property and does not specify a percentage of the "outstanding balance" to be awarded as attorneys' fees, Judge Bell correctly chose to apply section 6-21.2(2). Under this section, Judge Bell properly awarded Plaintiff attorneys' fees in the amount of fifteen percent of the "outstanding balance" as determined by the jury. Therefore, Plaintiff's argument is without merit.

[5] Plaintiff also asserts that the trial court abused its discretion by not awarding attorneys' fees in the underlying summary ejectment action. Citing *Coastal Production Credit Ass'n v. Goodson Farms, Inc.*, 70 N.C. App. 221, 319 S.E.2d 650, *disc. review denied*, 312 N.C. 621, 323 S.E.2d 922 (1984), Plaintiff argues that because the summary ejectment action was "reasonably related" to the breach of contract action for which the court awarded fees, the trial court was required to award fees in the underlying action. Again, we disagree.

In *Coastal Production*, this Court held that it was not an abuse of discretion to allow "fees for participation in other proceedings to expedite collection or preserve assets[.]" *Id.* at 228, 319 S.E.2d at 656. However, the Court recognized that "the burden remains on the claimant to present evidence that the other proceedings are reasonably related" to the principal proceeding before the trial court. *Id.* (Citation omitted). Further, this Court held only that the trial court *may* award fees when a reasonable relationship between the proceedings is proved; it did not hold that the court is required to award fees. *Id.* "Our result[] [is] that participation in other proceedings *may be allowed* as costs . . . ." *Id.* (Emphasis added).

"A judge is subject to reversal for abuse of discretion only upon a showing by a litigant that the challenged actions are manifestly unsupported by reason." *Clark v. Clark*, 301 N.C. 123, 129, 271 S.E.2d 58, 63 (1980) (citation omitted). After a thorough review of the record on appeal herein, we cannot conclude that Plaintiff has proved the trial judge abused his discretion in not awarding Plaintiff attorneys' fees in the underlying ejectment action. This argument is overruled.

[6] Finally, Plaintiff argues that Judge Bell erred in failing to award attorneys' fees without considering the application of N.C. Gen. Stat. § 6-20. Section 6-20 provides that "[i]n other actions, costs may be allowed or not, in the discretion of the court, unless otherwise pro-

vided by law." N.C. Gen. Stat. § 6-20 (2005). Plaintiff's reliance on this statute is misplaced. In *Lee Cycle Ctr., Inc. v. Wilson Cycle Ctr., Inc.,* 143 N.C. App. 1, 13, 545 S.E.2d 745, 752, *aff'd per curiam,* 354 N.C. 565, 556 S.E.2d 293 (2001), this Court determined that "section 6-20 does not authorize a trial court to include attorney's fees as a part of the costs awarded under that section, unless specifically permitted by another statute." Plaintiff does not provide citation to any statute and our research reveals none that allows an award of attorneys' fees in breach of contract cases. We thus hold that the trial court did not err in failing to award attorneys' fees under section 6-20.

Plaintiff's assignments of error challenging the attorneys' fees as calculated and awarded by Judge Bell are overruled.

## E. FINDINGS OF FACT IN ORDER DENYING JUDGMENT NOTWITHSTANDING THE VERDICT AND NEW TRIAL

**[7]** Plaintiff's final argument is that the trial court erred in failing to make findings of fact and conclusions of law, as requested by Plaintiff, in its order denying Plaintiff's motion for judgment notwithstanding the verdict or new trial.

"Findings of fact and conclusions of law are necessary on decisions of any motion or order ex mero motu only when requested by a party and as provided by Rule 41(b)." N.C. Gen. Stat. § 1A-1, Rule 52(a)(2) (2005). Generally, a trial court's compliance with a Rule 52(a)(2) motion is mandatory and, once requested, "the findings of fact and conclusions of law on a decision of a motion, as in a judgment after a non-jury trial, must be sufficiently detailed to allow meaningful review." *Andrews v. Peters,* 75 N.C. App. 252, 258, 330 S.E.2d 638, 642 (1985) (citations omitted), *aff'd,* 318 N.C. 133, 347 S.E.2d 409 (1986).

When considering a trial court's ruling on a motion for judgment notwithstanding the verdict, our standard of review is *de novo. See Davis, supra.* " 'Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the [trial court].' " *Penninsula Prop. Owners Ass'n, Inc. v. Crescent Resources, LLC,* 171 N.C. App. 89, 92, 614 S.E.2d 351, 353 (quoting *In re Appeal of the Greens of Pine Glen Ltd. P'ship,* 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)), *appeal dismissed and disc. review denied,* 360 N.C. 177, 626 S.E.2d 648 (2005).

Since our review of the trial court's denial of Plaintiff's motion for judgment notwithstanding the verdict is *de novo,* the purpose

for requiring findings of fact and conclusions of law under Rule 52—to allow meaningful appellate review—does not arise in this case. That is, "we consider[] the matter anew" and would freely substitute our judgment for that of the trial court regardless of whether the trial court made findings of fact and conclusions of law. *Id.* Therefore, it was not necessary for Judge Bell to make findings of fact and conclusions of law in his order denying Plaintiff's motion for judgment notwithstanding the verdict. Accordingly, Plaintiff's argument is overruled.

We next address Plaintiff's alternative motion for a new trial. On 4 April 2005, Plaintiff moved for a new trial pursuant to Rule 59(a)(5) ("[m]anifest disregard by the jury of the instructions of the court"), Rule 59(a)(6) ("inadequate damages appearing to have been given under the influence of passion or prejudice"), Rule 59(a)(7) ("[i]nsufficiency of the evidence to justify the verdict or that the verdict is contrary to law"), Rule 59(a)(8) ("[e]rror in law occurring at the trial and objected to by the party making the motion"), and Rule 59(a)(9) ("[a]ny other reason heretofore recognized as grounds for a new trial"). On 2 November 2005, Plaintiff requested findings of fact and conclusions of law in the trial court's ruling on its motion for a new trial.

"Generally, a motion for new trial is addressed to the sound discretion of the trial court, and its ruling will not be disturbed absent a manifest abuse of that discretion." *Kinsey v. Spann*, 139 N.C. App. 370, 372, 533 S.E.2d 487, 490 (2000) (citing *In re Will of Herring*, 19 N.C. App. 357, 198 S.E.2d 737 (1973)). "[W]hen requested, findings of fact and conclusions of law must be made even on rulings resting within the trial court's discretion." *Andrews*, 318 N.C. at 139, 347 S.E.2d at 413. "However, where the motion involves a question of law or legal inference, our standard of review is *de novo*." *Kinsey*, 139 N.C. App. at 372, 533 S.E.2d at 490 (citing *In re Will of Herring, supra*).

Here, as with the motion for judgment notwithstanding the verdict, Plaintiff's motion for a new trial pursuant to Rule 59(a)(7) and Rule 59(a)(8) presents questions of law which receive *de novo* review on appeal. Accordingly, as discussed *supra*, findings of fact and conclusions of law will not aid our review and thus are not required. However, because the trial court's ruling on Plaintiff's motion under Rule 59(a)(5), Rule 59(a)(6), and Rule 59(a)(9) is evaluated for an abuse of discretion, findings of fact and conclusions of law are necessary to effectuate meaningful appellate review. Therefore, the trial

court erred in failing to make findings and conclusions as requested by Plaintiff. Accordingly, this matter is remanded to the trial court for the entry of an order containing appropriate findings of fact and conclusions of law on Plaintiff's motion for a new trial under Rule 59(a)(5), (a)(6), and (a)(9).

### III. DEFENDANTS' APPEAL

### A. ORDER STRIKING ANSWERS DENYING LIABILITY

**[8]** We now turn our attention to Defendants' assignments of error. Defendants first contend the trial court erred by striking their answers denying liability, leaving only damages to be determined by the jury. Because Defendants did not properly preserve this argument for our review, it is dismissed.

During the early stages of this case, Defendants failed to cooperate with Plaintiff regarding certain discovery matters. After unsuccessful and repeated attempts to obtain responses to interrogatories and requests for production of documents from Defendants, on 13 December 2002 Plaintiff filed a motion to compel discovery. Following a hearing, on 29 January 2003 Judge Johnston entered an order compelling discovery. When Defendants did not comply with this order, on 3 March 2003 Plaintiff filed a motion for sanctions. After determining that "there was no good cause or justification" for the failure to comply with the trial court's 29 January 2003 order, by order filed 11 April 2003, Judge Evans struck "those portions of each Defendants' [sic] Answer which constitute a defense to or denial of liability to the Plaintiff[.]" On 9 May 2003, Defendants appealed from Judge Evans's order.

After filing notice of appeal, Defendants failed to timely perfect their appeal, and by order filed 3 November 2003, Judge Cayer dismissed Defendants' appeal. Defendants did not appeal from this order. Instead, after final judgment was entered, Defendants gave notice of appeal purporting, *inter alia*, to appeal from Judge Evans's 11 April 2003 order striking their defenses.

Once Defendants' right to appeal from Judge Evans's 11 April 2003 order was lost for failure to timely perfect that appeal, the appropriate action would have been to petition this Court for certiorari. *See* N.C. R. App. P. 21(a)(1) ("[C]ertiorari may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action . . . ."). Here,

Defendants did not petition for certiorari. Because Defendants failed to follow the proper procedure to have the merits of this argument considered, this argument is dismissed. Furthermore, although Defendants assigned error to Judge Evans's 19 October 2004 order denying their motion to vacate the 11 April 2003 order, they present no argument in their brief addressing this assignment of error. Therefore, this assignment of error is deemed abandoned. *See* N.C. R. App. P. 28(b)(6) (noting that assignments of error "not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned").

## B. RETRYING DEFENDANT CLAYTON

[9] By their next argument, Defendants contend the trial court erred in "retrying" Defendant Clayton because he had been dismissed with prejudice from the underlying summary ejectment case. Specifically, Defendants contend that Clayton's dismissal with prejudice in the ejectment action operated as *res judicata* or collateral estoppel on Clayton's liability in the breach of contract case. We do not agree.

Generally, "[t]he doctrine of *res judicata* applies where there are two actions involving the same parties and the same claims or demands; the doctrine of collateral estoppel operates where there are two actions involving the same parties, but where the second action arises from a different claim or demand." *Chrisalis Properties, Inc. v. Separate Quarters, Inc.*, 101 N.C. App. 81, 87-88, 398 S.E.2d 628, 633 (1990) (citations omitted), *disc. review denied*, 328 N.C. 570, 403 S.E.2d 509 (1991). Section 42-28 of the General Statutes provides in relevant part that

> [w]hen the lessor or his assignee files a complaint [for summary ejectment] . . . [t]he plaintiff may claim rent in arrears, and damages for the occupation of the premises since the cessation of the estate of the lessee, . . . but if he omits to make such claim, he shall not be prejudiced thereby in any other action for their recovery.

N.C. Gen. Stat. § 42-28 (2005). A plain reading of this statute establishes that "the summary ejectment statute specifically allows a lessor to bring an action to regain possession of the premises separate from an action for damages[.]" *Chrisalis Properties*, 101 N.C. App. at 88, 398 S.E.2d at 633. Therefore, the disposition of the underlying case would have no *res judicata* or collateral estoppel effect on

Plaintiff's subsequent suit for recovery of damages. Furthermore, because *res judicata* and collateral estoppel are affirmative defenses that must be pled, *In re D.R.S.*, 181 N.C. App. 136, 638 S.E.2d 626 (2007), and although they were properly pled in Defendants' answer, Judge Evans struck these defenses. They thus have no application here. This argument is overruled.

## C. TESTIMONY OF PAUL KAPLAN

[10] By their final argument, Defendants contend the trial court erred by allowing Paul Kaplan ("Kaplan"), a person responsible for the management of the premises which are the subject of this litigation, to testify regarding the extent of damages incurred by Plaintiff because Kaplan had no personal knowledge of the matters to which he was testifying. We disagree.

"Admission of evidence is 'addressed to the sound discretion of the trial court and may be disturbed on appeal only where an abuse of such discretion is clearly shown.'" *Gibbs v. Mayo*, 162 N.C. App. 549, 561, 591 S.E.2d 905, 913 (quoting *Sloan v. Miller Bldg. Corp.*, 128 N.C. App. 37, 45, 493 S.E.2d 460, 465 (1997)), *appeal dismissed and disc. review denied*, 358 N.C. 543, 599 S.E.2d 45 (2004). "A trial court abuses its discretion only when its ruling is 'manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision.'" *Lane v. American Nat'l Can Co.*, 181 N.C. App. 527, 532, 640 S.E.2d 732, 736 (2007) (quoting *Briley v. Farabow*, 348 N.C. 537, 547, 501 S.E.2d 649, 656 (1998)).

Defendants argue the trial court erred in admitting Kaplan's testimony because when "a witness does not possess the required personal knowledge of the matters to which he or she is testifying, then such testimony constitutes inadmissible hearsay." Generally, a "witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter." N.C. Gen. Stat. § 8C-1, Rule 602 (2005). However, in *U.S. Leasing Corp. v. Everett, Creech, Hancock & Herzig*, 88 N.C. App. 418, 423, 363 S.E.2d 665, 667 (citation omitted), *disc. review denied*, 322 N.C. 329, 369 S.E.2d 364 (1988), this Court determined that even though the knowledge of the witness may be "limited to the contents of plaintiff's file with which he had familiarized himself, he could properly testify about the records and their significance so long as the records themselves were admissible under the business records exception to the hearsay rule[.]" The business records exception provides

[a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, . . . made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness[,]

is not excluded by the hearsay rule. N.C. Gen. Stat. § 8C-1, Rule 803(6) (2005).

In this case, it is clear that throughout his testimony Kaplan was referring to documents from Plaintiff's file and that he did not have personal knowledge of the matters contained in those documents. However, it is also clear that the documents to which Kaplan referred were admissible in evidence under the business records exception to the hearsay rule. Specifically, Kaplan testified that the documents were "maintained during the normal course of business[,]" that he was "one of the custodians of [the] business records[,]" and that he was "familiar with the contents ∴ . . [of the] business records relating to [the] property" that is the subject of this litigation. Based on this testimony, Kaplan's subsequent testimony about the matters contained in the business records was admissible under our holding in *U.S. Leasing Corp.* Accordingly, Defendants' argument is overruled.

For the reasons stated, the judgment and orders of the trial court are affirmed in part, reversed in part, and the case is remanded for the entry of an order on prejudgment interest and findings of fact and conclusions of law on Plaintiff's motion for a new trial consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Judges TYSON and STROUD concur.