# COURT OF APPEALS

OF

## NORTH CAROLINA

AT

### RALEIGH

———

TYRONE WILLIAMS AND WHF, INC. OF VIRGINIA, PLAINTIFF v. ANNITTIE PEABODY
AND PEABODY'S HOME IMPROVEMENTS, INC., DEFENDANTS

No. COA10-1461

(Filed 15 November 2011)

**1. Collateral Estoppel and Res Judicata—collateral estoppel—
no determination in original final judgment on merits**

The trial court erred by entering summary judgment in favor
of defendants on grounds of collateral estoppel. Plaintiffs
brought suit against defendants alleging unjust enrichment and
praying for injunctive relief, and no determination was made
regarding these claims in the original final judgment on the merits.

**2. Collateral Estoppel and Res Judicata—res judicata—
reasonable diligence**

Assuming *arguendo* that plaintiffs and defendants satisfied
the requirement of identity of parties, plaintiffs' claims were
barred by *res judicata* when the heart of both the original and
present lawsuits were disputes regarding four properties.
Plaintiffs, exercising reasonable diligence, should have brought
forward the claims for unjust enrichment and prayer for injunc-
tive relief at the time of the original lawsuit.

**3. Collateral Estoppel and Res Judicata—res judicata—
identity of parties—Lassiter exception**

Although the trial court did not err by dismissing plaintiff
individual's lawsuit against defendants based on the doctrine of

1

*res judicata*, it erred by barring defendant company's complaint on grounds of *res judicata*. The *Lassiter* exception did not apply because the evidence did not support the control requirement of privity. The case was remanded for a determination of whether defendant individual had control of defendant company and its action against defendants.

Judge ERWIN concurring in part and dissenting in part.

Appeal by Plaintiff from Order entered 12 June 2010 by Judge E. Lynn Johnson in Cumberland County Superior Court. Heard in the Court of Appeals 28 April 2011.

*Jack E. Carter, for Plaintiffs.*

*Thorp, Clarke & Neville, by J. Thomas Neville and Sharon Lee Tucker, for Defendants.*

THIGPEN, Judge.

Tyrone Williams ("Williams") and WHF, Inc. of Virginia ("WHF") (together, "Plaintiffs") filed suit against Annittie Peabody ("Peabody") and Peabody's Home Improvements, Inc. (together "Defendants") subsequent to a similar lawsuit involving some but not all of the same parties. Upon motion by Defendants, the trial court granted summary judgment in favor of Defendants on the grounds of *res judicata* and collateral estoppel. We must determine whether Plaintiffs' lawsuit was correctly dismissed pursuant to the doctrines of *res judicata* and collateral estoppel. We affirm the trial court's order dismissing Williams' lawsuit against Defendants. However, we reverse the trial court's order dismissing WHF's lawsuit against Defendants and remand for additional evidence.

The evidence of record tends to show that Williams and Crystal Williams were at all times relevant to these proceedings husband and wife and managers of Platinum Lions Group, LLC., and WHF, Inc. of Virginia. Peabody is the sole shareholder and officer of Peabody's Home Improvements, Inc.

On 3 April 2008, Williams changed the registered agent of Peabody's Home Improvements, Inc., from Peabody to Williams by allegedly forging Peabody's signature on a Change of Registered Office and/or Registered Agent form, which stated that Williams was the new registered agent and president of Peabody's Home Improvements, Inc.

On 1 October 2008, Williams, allegedly misrepresenting himself as the president of Peabody's Home Improvements, Inc., signed four general warranty deeds purportedly granting Platinum Lions Group, LLC, a fee simple interest in four properties owned by Peabody's Home Improvements, Inc. On 4 October 2008, Williams allegedly forged the signature of Crystal Williams, his wife and the president of Platinum Lions Group, LLC, on an additional four general warranty deeds referencing the same four properties, which supposedly granted Crystal Williams a fee simple interest in the properties. The record also contains one additional general warranty deed, filed on 3 April 2009, which purportedly conveyed title to three of the same four properties from Crystal Williams to WHF.

On 10 November 2008, Peabody's Home Improvements, Inc., filed a complaint and action to quiet title (File # 08 CVS 11281) ("original lawsuit") against Williams, Crystal Williams, and Platinum Lions Group, LLC, alleging claims for fraud, conspiracy to commit fraud, and unfair and deceptive trade practices.

On 15 January 2009, Williams filed a motion to dismiss the complaint alleging the following: "[T]he action . . . involve[d], at best, an intracorporate dispute between shareholders [of Peabody's Home Improvements, Inc.]"; Peabody lacked standing and corporate authority to file the complaint; Williams was the president and sole shareholder of Peabody's Home Improvements, Inc.; Williams, as president of Peabody's Home Improvements, Inc., executed general warranty deeds conveying title to the four aforementioned properties; Williams "does not desire that his wholly owned corporation . . . sue him and has not authorized it to sue him." Williams asserted no counterclaims.

On 12 March 2010, Williams filed a response to Peabody's request for admissions, in which Williams admitted he signed Peabody's name to the Change of Registered Office and/or Registered Agent form. However, Williams claimed to have signed it with Peabody's assent and permission.

Also on 12 March 2010, Williams filed an affidavit which ostensibly contradicted his assertions in the motion to dismiss by stating that Peabody's Home Improvements, Inc., is "sole[ly] operated by Annittie Peabody[.]" Williams also stated in the affidavit that he placed $100,000.00 in an account Peabody opened in the name of Peabody's Home Improvements, Inc., and these monies were used to purchase the four properties. Williams asserted that to quiet title such

that Peabody's Home Improvements, Inc., owned the four properties would unjustly enrich Peabody and be grossly inequitable.

Peabody's Home Improvements, Inc., filed a motion for summary judgment, which the trial court granted on 19 March 2010. Williams did not appeal this order.

On 24 March 2010, Plaintiffs filed a complaint (File # 10 CVS 2682) ("present lawsuit") against Defendants, alleging unjust enrichment and requesting injunctive relief to restrain Defendants from selling the four properties.

On 1 June 2010, Defendants filed an answer and moved to dismiss Plaintiffs' complaint on grounds of *res judicata* and collateral estoppel. On 21 June 2010, the trial court entered an order granting summary judgment in favor of Defendants on grounds of *res judicata* and collateral estoppel. From this order, Plaintiffs appeal.

I: Summary Judgment

Plaintiffs' argument on appeal is that the trial court erred by entering summary judgment against Plaintiffs because the doctrines of *res judicata* and collateral estoppel do not apply.

Summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2009). "A defendant may show entitlement to summary judgment by: (1) proving that an essential element of the plaintiff's case is nonexistent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense which would bar the claim." *Carcano v. JBSS, LLC*, 200 N.C. App. 162, 166, 684 S.E.2d 41, 46 (2009) (quotation omitted). *Res judicata* and collateral estoppel are affirmative defenses. *N.C. Indus. Capital, LLC v. Clayton*, 185 N.C. App. 356, 374, 649 S.E.2d 14, 26 (2007).

"An appeal from an order granting summary judgment solely raises issues of whether on the face of the record there is any genuine issue of material fact, and whether the prevailing party is entitled to judgment as a matter of law." *Carcano*, 200 N.C. App. at 166, 684 S.E.2d at 46. (citation omitted). "We review a trial court's order granting or denying summary judgment *de novo*." *Craig v. New Hanover Cty.*

*Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Id.* (quotation omitted). Our review, however, "is necessarily limited to whether the trial court's conclusions as to the[] questions of law were correct ones." *Ellis v. Williams*, 319 N.C. 413, 415, 355 S.E.2d 479, 481 (1987).

In the trial court's order granting Defendants' motion for summary judgment, the trial court made the following conclusion:

> The court finds as a matter of law and pursuant to the doctrine[s] of *res judicata* and collateral estoppel that all issues involving the parties related to this subject suit were decided in *Peabody's Home Improvements Inc. v. Tryone Williams et al.* (Cumberland County File No.: 08-CVS-11281) and the Plaintiff is therefore estopped from asserting this new lawsuit.

As such, our review is limited to whether the doctrines of *res judicata* and collateral estoppel were correctly applied.

## II: *Res Judicata* and Collateral Estoppel

"The doctrines of *res judicata* (claim preclusion) and collateral estoppel (issue preclusion) are companion doctrines which have been developed by the Courts for the dual purposes of protecting litigants from the burden of relitigating previously decided matters and promoting judicial economy by preventing needless litigation." *Little v. Hamel*, 134 N.C. App. 485, 487, 517 S.E.2d 901, 902 (1999) (quotation omitted).

"Under the doctrine of res judicata or 'claim preclusion,' a final judgment on the merits in one action precludes a second suit based on the same cause of action between the same parties or their privies." *Whitacre P'ship v. BioSignia, Inc.*, 358 N.C. 1, 15, 591 S.E.2d 870, 880 (2004) (citation omitted). "For *res judicata* to apply, a party must show that the previous suit resulted in a final judgment on the merits, that the same cause of action is involved, and that both the party asserting *res judicata* and the party against whom *res judicata* is asserted were either parties or stand in privity with parties." *State ex rel. Tucker v. Frinzi*, 344 N.C. 411, 413-14, 474 S.E.2d 127, 128 (1996) (quotation omitted). "The doctrine prevents the relitigation of all matters . . . that were or should have been adjudicated in the prior action." *Whitacre P'ship*, 358 N.C. at 15, 591 S.E.2d at 880 (quotation omitted).

Under the doctrine of collateral estoppel, or issue preclusion, "a final judgment on the merits prevents relitigation of issues actually litigated and necessary to the outcome of the prior action in a later suit involving a different cause of action between the parties or their privies." *Frinzi*, 344 N.C. at 414, 474 S.E.2d at 128. A party asserting collateral estoppel is required to show that "the earlier suit resulted in a final judgment on the merits, that the issue in question was identical to an issue actually litigated and necessary to the judgment, and that both the party asserting collateral estoppel and the party against whom collateral estoppel is asserted were either parties to the earlier suit or were in privity with parties."[1] *Id.* at 414, 474 S.E.2d at 128-29.

"In general, a cause of action determined by an order for summary judgment is a final judgment on the merits." *Green v. Dixon*, 137 N.C. App. 305, 310, 528 S.E.2d 51, 55, *aff'd per curiam*, 352 N.C. 666, 535 S.E.2d 356 (2000). The parties in the present case do not dispute that a final judgment on the merits was entered in the original lawsuit.

### i: Collateral Estoppel

[1] We first address whether the trial court erred by barring Plaintiffs' action on grounds of collateral estoppel. We conclude the trial court erred.

For purposes of collateral estoppel, "the prior judgment serves as a bar *only as to issues actually litigated* and determined in the original action." *City of Asheville v. State*, 192 N.C. App. 1, 17, 665 S.E.2d 103, 117 (2008), *appeal dismissed, disc. review denied*, 363 N.C. 123, 672 S.E.2d 685 (2009) (quotation omitted) (emphasis in original). "[A]n issue is actually litigated, for purposes of collateral estoppel or issue preclusion, if it is properly raised in the pleadings or otherwise submitted for determination and [is] in fact determined." *Id.* (quotation omitted). "A very close examination of matters actually litigated must be made in order to determine if the underlying issues are in fact identical[;] [i]f they are not identical, then the doctrine of collateral estoppel does not apply." *Id.*

In the original lawsuit in this case, Peabody's Home Improvements, Inc., brought suit against Williams, Crystal Williams, and Platinum

---

1. *But see Thomas M. McInnis & Associates, Inc. v. Hall*, 318 N.C. 421, 432-34, 349 S.E.2d 552, 559-60 (1986) (stating, "[t]he modern trend in both federal and state courts is to abandon the requirement of mutuality for collateral estoppel, subject to certain exceptions, as long as the party to be collaterally estopped had a full and fair opportunity to litigate the issue in the earlier action[,]" and holding, "we see no good reason for continuing to require mutuality of estoppel in cases like this case").

Lions Group, LLC, alleging causes of action to quiet title, for unfair and deceptive trade practices, fraud, and conspiracy to commit fraud. The defendants in the original lawsuit did not assert counterclaims. In the present lawsuit, Plaintiffs brought suit against Defendants alleging unjust enrichment and praying for injunctive relief. No determination was made regarding unjust enrichment or injunctive relief in the original final judgment on the merits. We conclude the issues in the present lawsuit were not actually litigated in the original lawsuit, and therefore, collateral estoppel does not bar Plaintiffs' action. The trial court erred by entering summary judgment because Plaintiffs' claims were barred by collateral estoppel.

## ii: *Res Judicata:* Estoppel of Claims

[2] We next address whether Plaintiffs' claims were estopped on principles of *res judicata. Res judicata* "bars every ground of recovery or defense which was actually presented or which could have been presented in the previous action." *Goins v. Cone Mills Corp.*, 90 N.C. App. 90, 93, 367 S.E.2d 335, 336-37, *disc. rev. denied*, 323 N.C. 173, 373 S.E.2d 108 (1988). A final judgment "operates as an estoppel not only as to all matters actually determined or litigated in the prior proceeding, but also as to all relevant and material matters within the scope of the proceeding which the parties, in the exercise of reasonable diligence, could and should have brought forward for determination." *Rodgers Builders, Inc. v. McQueen*, 76 N.C. App. 16, 22, 331 S.E.2d 726, 730 (1985), *disc. review denied*, 315 N.C. 590, 341 S.E.2d 29 (1986) (citation omitted). "A party is required to bring forth the whole case at one time and will not be permitted to split the claim or divide the grounds for recovery; thus, a party will not be permitted, except in special circumstances, to reopen the subject of the . . . litigation with respect to matters which might have been brought forward in the previous proceeding." *Id.* at 23, 331 S.E.2d at 730. "The defense of *res judicata* may not be avoided by shifting legal theories or asserting a new or different ground for relief[.]" *Id.* at 30, 331 S.E.2d at 735.

> The plea of *res adjudicata* applies, . . . not only to the points upon which the court was required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject in litigation and which the parties, exercising reasonable diligence, might have brought forward at the time and determined respecting it.

*Edwards v. Edwards*, 118 N.C. App. 464, 472, 456 S.E.2d 126, 131 (1995) (quotation omitted).

Plaintiffs argue on appeal that "the issues in the first suit . . . were different[;] . . . and the issues raised in the [present lawsuit] were not relevant and material to the first ligitation[.]" We are not persuaded. At the heart of both the original and present lawsuits lies a dispute regarding the four properties. In the original lawsuit, Peabody's Home Improvements, Inc., alleged the deeds conveying title were "deceptively and fraudulently executed[.]" In the present lawsuit, Plaintiffs alleged "the funds of the Plaintiffs were the sole source of revenue for acquisition of the properties." We believe Plaintiffs' claims in the present lawsuit are claims which Plaintiffs, exercising reasonable diligence, might have brought forward at the time of the original lawsuit. Thus, assuming *arguendo* Plaintiffs and Defendants in the present lawsuit satisfy the requirement of identity of parties, Plaintiffs' claims are barred by *res judicata.*

### iii: *Res Judicata:* Identity of Parties

[3] We now address whether Plaintiffs and Defendants in the present lawsuit are the same or in privity with the parties to the original lawsuit. "[B]oth the party asserting *res judicata* and the party against whom *res judicata* is asserted [must be] either parties or stand in privity with parties" to the original action. *Frinzi*, 344 N.C. at 414, 474 S.E.2d at 128. "In general, privity involves a person so identified in interest with another that he represents the same legal right." *Whitacre P'ship*, 358 N.C. at 36, 591 S.E.2d at 893 (quotation omitted). "Although the meaning of 'privity' has proven to be elusive, and there is no definition of the word . . . which can be applied in all cases, the prevailing definition in our cases, at least in the context of *res judicata[,]* . . . is that privity denotes a mutual or successive relationship to the same rights of property." *Id.* (quotation omitted). "In determining whether such a privity relation exists, courts will look beyond the nominal party whose name appears on the record as plaintiff and consider the legal questions raised as they may affect the real party or parties in interest." *Id.*

The mere fact that one is a shareholder or officer of a corporation is not sufficient to establish privity for purposes of *res judicata* between the shareholder or officer and the corporation. *Troy Lumber Co. v. Hunt*, 251 N.C. 624, 627, 112 S.E.2d 132, 135 (1960).

However, there is an exception to the general rule requiring identity of parties:

A person who is not a party but who controls an action, individually or in cooperation with others, is bound by the adjudications of litigated matters as if he were a party if he has a proprietary interest or financial interest in the judgment or *in the determination of a question of fact or a question of law with reference to the same subject matter, or transactions;* if the other party has notice of his participation, the other party is equally bound.

*Thompson v. Lassiter,* 246 N.C. 34, 39, 97 S.E.2d 492, 496 (1957) (emphasis in original); *see also Smoky Mountain Enterprises, Inc. v. Rose,* 283 N.C. 373, 196 S.E.2d 189 (1973). *Smoky Mountain Enterprises* and *Troy Lumber Co.* address this exception in the context of corporations. In both *Smoky Mountain Enterprises* and *Troy Lumber Co.*, the North Carolina Supreme Court placed emphasis on the shareholders of the corporations in determining whether an individual had "control" for purposes of applying the *Lassiter* exception to the rule of privity. *Smoky Mountain Enterprises, Inc.,* 283 N.C. at 377, 196 S.E.2d at 192 (applying the exception in part because the individual was the president and owned all the stock of the corporate party); *Troy Lumber Co.,* 251 N.C. at 628, 112 S.E.2d at 136 (declining to apply the exception in part because "[the corporation] has other shareholders than [the individual]").

In the present case, the parties to the original lawsuit (File # 08 CVS 11281) were Peabody's Home Improvements, Inc., Williams, Crystal Williams, and Platinum Lions Group, LLC. The parties to the present lawsuit (File # 10 CVS 2682) are Williams, WHF, Peabody, and Peabody's Home Improvements, Inc. Both Peabody and WHF are new parties in the present lawsuit.[2] Although evidence of record tends to show that Williams is the chief operating officer of WHF, this fact alone is insufficient to create privity between WHF and Williams. *See Troy Lumber Co.,* 251 N.C. at 627, 112 S.E.2d at 135 (holding, "[t]he admission that F. L. Taylor is the controlling stockholder of Troy Lumber Company, is chairman of its board of directors, [is] President, and has complete charge of its operations and business, is insufficient to establish identity or privity between him and the corporation for the purpose of *res judicata*"). Likewise, the evidence surrounding Peabody's roles in ownership and management of Peabody's Home Improvements, Inc., is insufficient to create privity between Peabody

2. We note that both Crystal Williams and Platinum Lions Group, LLC, were parties to the original lawsuit but not to the present lawsuit. Their absence in the present case is immaterial, as they are neither a "party asserting *res judicata*" nor a "party against whom *res judicata* is asserted[.]" *Frinzi,* 344 N.C. at 414, 474 S.E.2d at 128.

and Peabody's Home Improvements, Inc. *Id.* Therefore, we must determine whether the *Lassiter* exception to the rule requiring privity of identities applies to Peabody and Peabody's Home Improvements, Inc., and to Williams and WHF.

   a:  Peabody and Peabody's Home Improvements, Inc.

We first consider Peabody's "control" of the original lawsuit and the present lawsuit, which is the threshold requirement of the exception to the rule requiring privity of identities. *See Lassiter,* 246 N.C. 34, 39, 97 S.E.2d 492, 496 (stating, "[a] person who is not a party but who *controls* an action, individually or in cooperation with others . . .") (emphasis added). Williams' affidavit provides uncontroverted evidence that Peabody's Home Improvements, Inc., is "solely operated by Anittie Peabody"; is "without real directors or shareholders"; and is "the alter ego of Anittie Peabody." We believe this is sufficient to satisfy the control element of the *Lassiter* exception to the rule requiring privity. *See Smoky Mountain Enterprises, Inc.,* 283 N.C. 373, 196 S.E.2d 189.

We next address the second requirement of the *Lassiter* exception, whether Peabody "has a proprietary interest or financial interest in the judgment[.]" *Lassiter,* 246 N.C. at 39, 97 S.E.2d at 496. Peabody's Home Improvements, Inc., owned the four properties central to both the original and present lawsuits prior to the properties being purportedly conveyed to Platinum Lions Group, LLC, by Williams. There fore, the corporate party, Peabody's Home Improvements, Inc., has a financial interest in the judgment. Because the evidence shows Peabody's "control" of the corporate party, Peabody, individually, also has a financial interest in the judgment.

We finally address the third requirement of the *Lassiter* exception, whether Peabody has an interest "in the determination of a question of fact or a question of law with reference to the same subject matter, or transactions[.]" *Lassiter,* 246 N.C. at 39, 97 S.E.2d at 496. Because this is a dispute regarding four properties, and because Peabody's Home Improvements, Inc., alleged in the original lawsuit the deeds conveying title were "deceptively and fraudulently executed[,]" we believe Peabody and Peabody's Home Improvements, Inc., have an interest in the determination of questions of law and fact in this case.

Because the foregoing evidence supports the requirements set forth in *Lassiter* for application of the exception to the rule requiring privity, we conclude the *Lassiter* exception applies to Peabody and

Peabody's Home Improvements, Inc. Therefore, assuming *arguendo* the *Lassiter* exception also applies to Williams and WHF, the identity of parties requirement is met, such that the trial court did not err in concluding the doctrine of *res judicata* operated to estop Plaintiffs' action against Defendants. We must next determine whether the *Lassiter* exception, in fact, applies to Williams and WHF.

### b: Williams, individually

Regardless of whether there is evidence of control to support the *Lassiter* exception as to WHF, Williams was a party to the original lawsuit and also a party to the present lawsuit. Satisfying the *Lassiter* exception to the rule requiring privity is not necessary to our determination of whether *res judicata* applies to Williams, individually. Because Williams was a party to both lawsuits, and because the evidence supports application of the *Lassiter* exception to Peabody and Peabody's Home Improvements, Inc., the identity of parties requirement for application of *res judicata* to Williams' lawsuit against Defendants in the present case is met. *Frinzi*, 344 N.C. at 414, 474 S.E.2d at 128 ("[B]oth the party asserting *res judicata* and the party against whom *res judicata* is asserted [must be] *either* parties or stand in privity with parties" to the original action") (Emphasis added). *Res judicata* thus applies to Williams' lawsuit against Defendants, and the trial court did not err by dismissing his lawsuit pursuant to the doctrine of *res judicata*. We affirm this portion of the trial court's order.

### c: Williams and WHF

We must next determine whether the *Lassiter* exception applies to WHF. We first consider Williams' "control" of the original lawsuit and the present lawsuit, which is the threshold requirement of the exception to the rule requiring privity of identities. *See Lassiter*, 246 N.C. 34, 39, 97 S.E.2d 492, 496.

We believe *Smoky Mountain Enterprises, Inc.*, 283 N.C. 373, 196 S.E.2d 189, is instructive in this case. In *Smoky Mountain Enterprises, Inc.*, W.F. Burbank was the president and sole stockholder of Smoky Mountain Enterprises, Inc. *Id.* at 374, 196 S.E.2d at 190. Burbank and Jesse Rose signed a paper writing purporting to be a sales contract, which provided for the sale of all the assets of Smoky Mountain Enterprises, Inc. Burbank's signature on the contract did not denote his corporate capacity and was not attested to by any other officer of Smoky Mountain Enterprises, Inc. *Id.* On 27 February 1970, Burbank individually instituted an action against the

defendant, Rose, for breach of the contract. The trial court granted the defendant's motion for summary judgment and dismissed that action with prejudice. *Id.* at 375, 196 S.E.2d at 191. On 7 October 1971, Smoky Mountain Enterprises, Inc., as the plaintiff, filed a complaint against Rose, alleging the same breach of contract. The North Carolina Supreme Court held the second suit was barred by the doctrine of *res judicata*. *Id.* at 378, 196 S.E.2d at 193.

In *Smoky Mountain Enterprises, Inc.,* unlike the present case, Burbank's control of the corporation and of both the original and subsequent lawsuits, was sufficiently supported by evidence. The Court concluded, "Burbank was personally in control of the action before Judge Martin in Superior Court and the present action[;] [h]e had the same proprietary interest or financial interest in the judgment in both cases, and was equally concerned with the determination of questions of fact or questions of law pertaining to the contract which was involved in both actions." *Id.* at 377, 196 S.E.2d at 192. Burbank's control of the original and subsequent actions was shown, in part, by evidence that Burbank was the president and owned all the stock of Smoky Mountain Enterprises, Inc. The Court emphasized Burbank's testimony: "On June 26, 1969, I was President of Smoky Mountain Enterprises, Inc., a corporation in which I owned all the stock." *Id.* at 376, 196 S.E.2d at 192. The Court also emphasized the fact that central to both the original and subsequent lawsuit was a contract between Smoky Mountain Enterprises, Inc., and the defendant, which was signed by Burbank. The Court held that *res judicata* required that "Smoky Mountain Enterprises, Inc., is bound by the judgment of [the previous action][,]" which was instituted by Burbank, individually. *Id.* at 378, 196 S.E.2d at 192.

In the present case, the only evidence of record pertaining to Williams' control of the original and present lawsuits, particularly the action by WHF against Defendants, is that Williams is the chief operating officer of WHF. There is no evidence of record that Williams is the sole or controlling shareholder of WHF, such that Williams was in control of WHF, and thereby, in control of WHF's action against Defendants. The record is also silent on the question of whether there are other shareholders of WHF. Unlike in *Smoky Mountain Enterprises, Inc.* where the issue of control was clear, the evidence in this case shows, at most, that Williams was WHF's chief operating officer. *Troy Lumber Co.* holds this alone is insufficient to create privity. We believe a logical extension of *Smoky Mountain Enterprises, Inc.* and *Troy Lumber Co.,* is that this alone is insufficient to establish control

for purposes of suspension of the rule of privity. Because there is no evidence regarding the shareholders or other officers of WHF of record, and because the sole evidence of control is that Williams is WHF's chief operating officer, we believe this case is distinguishable from *Smoky Mountain Enterprises, Inc.* We believe the evidence in this case is insufficient to invoke the exception to the rule requiring privity as to WHF. If we concluded otherwise, the rule of privity for purposes of *res judicata* would be suspended in every case involving a chief operating officer of a corporation and the respective corporation, provided the remaining requirements in *Lassiter*, apart from "control," were met.[3]

We next address the second requirement of the *Lassiter* exception to the rule requiring identity of parties, whether WHF "has a proprietary interest or financial interest in the judgment[.]" *Lassiter*, 246 N.C. at 39, 97 S.E.2d at 496. At the heart of both the original and present lawsuits lies a dispute regarding the four properties. In the original lawsuit, Peabody's Home Improvements, Inc., alleged the deeds conveying title were "deceptively and fraudulently executed[.]" In the present lawsuit, Plaintiffs alleged "the funds of the Plaintiffs were the sole source of revenue for acquisition of the properties." Moreover, the record contains a general warranty deed purporting to convey three of the four aforementioned properties from Crystal Williams to WHF. Based on the foregoing, we conclude WHF has a financial interest in the judgment.

We finally address the third requirement of the *Lassiter* exception, whether WHF has an interest "in the determination of a question of fact or a question of law with reference to the same subject matter, or transactions[.]" *Lassiter*, 246 N.C. at 39, 97 S.E.2d at 496. Again, because this is a dispute regarding the four properties, because Plaintiffs alleged that Plaintiffs' funds "were the sole source of revenue for acquisition of the properties[,]" and because three of the properties were purportedly conveyed to WHF, we conclude WHF has an interest in the determination of questions of fact and law in reference to the subject matter in this case.

---

3. By comparison, although not authoritative in the context of *res judicata*, the definition of the element of control in the instrumentality rule for purposes of piercing the corporate veil offers some instruction on this point. It requires the following: "Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practices in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will, or existence of its own." *Glenn v. Wagner*, 313 N.C. 450, 455, 329 S.E.2d 326, 330 (1985) (quotation omitted).

While the evidence supports the second and third requirements set forth in *Lassiter*—that WHF has a "financial interest" and an interest in the "determination of a question of fact or a question of law with reference to the same subject matter"—the evidence is insufficient to support the control requirement of the *Lassiter* exception to the rule requiring privity. Therefore, we must conclude the *Lassiter* exception cannot apply to WHF. Based on the foregoing, we conclude there is a genuine issue as to whether the exception to the rule of privity applies to WHF because the evidence in this case is insufficient to satisfy the requirement of control. Therefore, we further conclude the trial court erred by granting summary judgment barring WHF's complaint on grounds of *res judicata*.

The dissenting opinion places strong emphasis on this Court's opinion in *Cline v. McCullen*, 148 N.C. App. 147, 557 S.E.2d 588 (2001), in its determination that the identity of parties requirement is met with regard to WHF and Williams. We believe *Cline* is neither contrary to nor concordant with our holding on the issue of identity of parties in the present case: *Cline* is simply inapplicable because the opinion in *Cline* does not involve corporations, and the *Cline* Court does not apply the Lassiter exception to the rule requiring privity of parties.

### III: Conclusion

In summary, we conclude that the doctrine of collateral estoppel does not apply to the present case, and the trial court erred by concluding Plaintiffs' action was barred by collateral estoppel. We further conclude the trial court did not err in applying the doctrine of *res judicata* to dismiss Williams' lawsuit against Defendants. However, in considering the application of *res judicata* to WHF's lawsuit against Defendants—particularly, the requirement of identity of parties—we cannot presume facts not in the record regarding Williams' control of the original and present lawsuits. We believe these facts are necessary in light of the holdings in *Smoky Mountain Enterprises* and *Troy Lumber Co.* As the evidence at trial was inadequate for the trial court to conclude the doctrine of *res judicata* applied to bar WHF's action, we conclude the trial court erred by doing so. We reverse this portion of the trial court's order on summary judgment and remand[4]

---

4. *See Johnson v. Schultz*, 364 N.C. 90, 96, 691 S.E.2d 701, 706 (2010) (affirming this Court's reversal of an order on summary judgment, stating that "a factual inquiry must be conducted to determine whether [the attorney] also represented sellers during the closing process[,]" and holding that "we remand this case to the trial court to determine if an attorney-client relationship existed between sellers and [the attorney]").

this case to the trial court to determine whether Williams had control of WHF and its action against Defendants.[5]

REVERSED and REMANDED.

Judge CALABRIA concurs.

Judge ERVIN concurs in part, dissents in part by separate opinion.

ERVIN, Judge, concurring in part and dissenting in part.

Although I concur in the Court's treatment of the "identity of claims" issue, its determination that the necessary "identity of parties" exists between Ms. Peabody and Peabody Home Improvements, and its decision to affirm the trial court's conclusion that the claims asserted by Mr. Williams against Ms. Peabody and Peabody Home Improvements are barred by the doctrine of *res judicata*, I am unable to reach a similar conclusion with respect to its discussion of the "identity of parties" question as applied to Mr. Williams and WHF. After carefully reviewing the record in light of the applicable law, I believe that the trial court correctly determined that the necessary "identity of parties" existed in this case with respect to Mr. Williams and WHF and, for that reason, properly granted summary judgment against both Plaintiffs and in favor of both Defendants on *res judicata* grounds. Given my conclusion that this case can be fully resolved by applying *res judicata* principles, I see no need to address the extent to which Plaintiffs' claims are collaterally estopped by determinations made during the course of the prior litigation between certain of the parties to this case. As a result, I concur in the Court's decision in part and dissent in part.

"Under the doctrine of *res judicata*, or claim preclusion, 'a final judgment on the merits in a prior action will prevent a second suit based on the same cause of action between the same parties or those in privity with them.' " *State ex rel. Tucker v. Frinzi*, 344 N.C. 411, 413, 474 S.E.2d 127, 128 (1996) (quoting *Thomas M. McInnis & Assoc. v. Hall*, 318 N.C. 421, 428, 349 S.E.2d 552, 556 (1986)). "For *res judicata* to apply, a party must 'show that the previous suit resulted in a final judgment on the merits, that the same cause of action is involved, and that both [the party asserting *res judicata* and the party

---

5. We do not address Defendants' remaining arguments on appeal because our review is limited to the trial court's conclusion of law in the order granting summary judgment. *Ellis*, 319 N.C. at 415, 355 S.E.2d at 481.

against whom *res judicata* is asserted] were either parties or stand in privity with parties.' " *Tucker*, 344 N.C. at 413-14, 474 S.E.2d at 128 (quoting *McInnis*, 318 N.C. at 429, 349 S.E.2d at 557). As a result of the fact that my only disagreement with the Court's discussion of the *res judicata* issue stems from its discussion of the "identity of parties" issue and its conclusion that Mr. Williams' participation in the prior litigation does not operate to bar the claims that have been asserted on behalf of WHF, I will focus the remainder of this concurring and dissenting opinion on that issue.

"The meaning of "privity" for res judicata purposes may be elusive." *Settle v. Beasley*, 309 N.C. 616, 620, 308 S.E.2d 288, 290 (1983). "Indeed, 'there is no definition of the word "privity" which can be applied in all cases.' " *Hales v. N.C. Insurance Guaranty Assn.*, 337 N.C. 329, 333-34, 445 S.E.2d 590, 594 (1994) (quoting *Masters v. Dunstan*, 256 N.C. 520, 524, 124 S.E.2d 574, 577 (1962)). "In general, 'privity involves a person so identified in interest with another that he represents the same legal right.' " *Whitacre P'ship v. BioSignia, Inc.*, 358 N.C. 1, 36, 591 S.E.2d 870, 893 (2004) (quoting *Tucker*, 344 N.C. at 417, 474 S.E.2d at 130). "The prevailing definition that has emerged from our cases is that 'privity' for purposes of *res judicata* and collateral estoppel 'denotes a mutual or successive relationship to the same rights of property.' " *Hales*, 337 N.C. at 334, 445 S.E.2d at 594 (quoting *Settle*, 309 N.C. at 620, 308 S.E.2d at 290) (other citations omitted); *see also Cline v. McCullen*, 148 N.C. App. 147, 150-51, 557 S.E.2d 588, 591 (2001) (holding that an action brought by a bonding business was barred by a prior judgment entered in a proceeding brought by a bond runner employed by that bonding business on the grounds that the bond runner "was in essence suing for the lost profits of [the bonding business] from whom he derived his commission," that "this successive or mutual relationship in the same rights in property establishes that the interests of both [the bond runner and the bonding business were] so intertwined that privity exists between them," and that the bond runner "had a substantial interest [stemming from the sharing of commissions that] constituted a proprietary interest in the judgment").

In addition:

> A person who is not a party but who controls an action, individually or in cooperation with others, is bound by the adjudications of litigated matters as if he were a party if he has a proprietary interest or financial interest in the judgment or *in the determination of a question of fact or a question of law with reference to the same subject matter, or transactions;*

if the other party has notice of his participation, the other party is equally bound.

*Thompson v. Lassiter*, 246 N.C. 34, 39, 97 S.E.2d 492, 496 (1957) (emphasis in original) (quoting *Carolina Power & Light Co. v. Merrimack Mut. Fire Ins. Co.*, 238 N.C. 679, 692, 79 S.E.2d 167, 176 (1953) (quoting *Restatement of Judgments* § 84)). Put another way:

"The rule is stated in 50 C.J.S. 318, as follows: 'A person who is neither a party nor privy to an action may be concluded by the judgment therein if he openly and actively, and with respect to some interest of his own, assumes and manages the defense of the action. A person who is not made a defendant of record and is not in privity with a party to the action may, as a general rule, subject himself to be concluded by the result of the litigation if he openly and actively, and with respect to some interest of his own, assumes and manages the defense of the action, although there is some authority to the contrary.' "

*Thompson*, 246 N.C. at 39, 97 S.E.2d at 496. As a result, in a case in which the plaintiff in the former action "is the president and owns all of the stock of [the plaintiff in the present action]," "was personally in control of [both the former action and the present action]," "had the same proprietary interest or financial interest in the judgment in both cases, and was equally concerned with the determination of questions of fact or questions of law pertaining to the contract which was involved in both actions," the plaintiff in the second action is bound by a judgment rendered against the plaintiff in the prior action even if the parties in question are not in "privity" with each other as that concept is utilized in our *res judicata* jurisprudence. *Enterprises v. Rose*, 283 N.C. 373, 377, 196 S.E.2d 189, 192 (1973); *see also Rodgers Builders v. McQueen*, 76 N.C. App. 16, 29, 331 S.E.2d 726, 734 (1985) (holding that an arbitration award was entitled to *res judicata* effect against an individual "not named as a party to the arbitration" because "he had a strong financial interest in the determination of the issues there because of his ownership interests" in entities that were parties to the arbitration and because "he was an active and controlling participant in the arbitration"), *disc. review denied*, 315 N.C. 590, 341 S.E.2d 29 (1986).

In reaching the conclusion that WHF is not bound by the prior judgment in favor of Peabody Home Improvements and adverse to Mr. Williams, the Court focuses on its determination that the record does not contain sufficient evidence that Mr. Williams controlled

WHF.[1] In essence, the Court concludes that the trial court's order with respect to WHF should be reversed on the grounds that *res judicata* principles have no application to cases involving individuals or entities that were not parties to the prior case in the absence of a finding that one of these individuals or entities "controlled" the other. I am unable to agree with the Court's exclusive focus upon the presence or absence of "control" because I believe that a proper resolution of the "identity of parties" issue in cases in which there is not a literal identity of parties does not hinge exclusively on the issue of "control." Instead, I believe that the relevant decisions of the Supreme Court and this Court require us to engage in a two-step analysis in such cases. First, we must determine whether Mr. Williams and WHF were "so identified in interest with another that [they] represent[] the same legal right[s]," *Whitacre*, 358 N.C. at 36, 591 S.E.2d at 893, such that they had " 'a mutual or successive relationship to the same rights of property.' " *Hales*, 337 N.C. at 334, 445 S.E.2d at 594 (quoting *Settle*, 309 N.C. at 620, 308 S.E.2d at 290). In the event that the answer to that initial question is in the affirmative, we need not reach the "control" issue upon which the Court focuses its attention. *Cline*, 148 N.C. App. at 150-51, 557 S.E.2d at 591 (stating that, "[a]lthough there is insufficient evidence to show that plaintiff controlled the prior litigation . . ., the court's findings do establish that plaintiff had a substantial interest, which in light of the fifty-fifty sharing of commission[s], constituted a proprietary interest in the judgment" sufficient to trigger a *res judicata* bar). In the event that the answer to the first question is negative, we must determine whether *res judicata* principles should be deemed applicable on the basis of "control." Unless one adopts an approach like that which I have outlined and rejects the approach adopted by the Court, the concept of "privity" becomes co-extensive with the concept of "control," a result which finds no support in the applicable decisional law, is directly

---

1. In its opinion, the Court concludes that the undisputed record evidence shows that Ms. Peabody controlled Peabody Home Improvements to such an extent as to render the two of them "identical" for *res judicata* purposes. As a result of the fact that I agree with the Court's conclusion to that effect, I see no need to address the extent, if any, to which Ms. Peabody and Peabody Home Improvement were asserting the same legal rights, thereby obviating any need for a "control" analysis.

contrary to this Court's decision in *Cline*,[2] and which the Court makes no effort to explain or defend.[3]

The undisputed evidence before the trial court clearly demonstrates that the legal interests asserted by Mr. Williams and WHF were identical. According to the allegations of the verified complaint filed in the present case, the properties at issue in this litigation "were acquired with funds belonging to the Plaintiffs" and "all funds for improvements and/or repairs to the above described real properties were derived from the Plaintiffs." Simply put, the allegations set out in the Plaintiffs' complaint describe the rights of Mr. Williams and WHF as one and the same. For that reason, Mr. Williams and WHF are, in fact, asserting the "same legal rights," a determination which compels the conclusion that the claims asserted by Mr. Williams and WHF rest on a " 'mutual or successive relationship to the same rights of property,' " *Hales*, 337 N.C. at 334, 445 S.E.2d at 594 (quoting *Settle*, 309 N.C. at 620, 308 S.E.2d at 290), sufficient to establish the necessary privity for *res judicata* purposes. As a result, I believe that the undisputed evidence before the trial court at the time of the summary judgment hearing demonstrated the existence of a sufficient identity of legal interests between Mr. Williams and WHF to support application of the doctrine of *res judicata* for the purpose of barring Plaintiffs' claims in this case.[4]

2. Although *Cline* involved a proprietorship rather than a corporation, I do not believe that this distinction is a material one, since both *Cline* and the present case deal with the *res judicata* effect of a litigation brought by an affiliated individual on subsequent litigation brought by a business, or *vice versa*.

3. The form of analysis adopted by the Court is also substantially undercut by *Troy Lumber*, in which the Supreme Court held that *res judicata* effect should not be afforded to a judgment rendered in a previous personal injury action in a subsequent property damage case brought on behalf of a corporation arising from the same accident despite the fact that the personal injury case was prosecuted by the corporate president, chairman of the board, and controlling stockholder acting in his individual capacity. In direct conflict with the Court's "control-only" approach to resolving "identity of parties" issues, the Supreme Court found that the judgment entered in the individual plaintiff's personal injury suit was not entitled to *res judicata* effect despite the fact that he "has at all times since the institution of the [property damage] action had control of it, as he also had control over his" individual personal injury claim. [*Troy*] *Lumber Co. v. Hunt*, 251 N.C. 624, 626, 112 S.E.2d 132, 134 (1960).

4. For the reasons set forth in the text, I do not believe that we need to address the "control" issue in order to properly resolve this case. In the event that "control" is, as the Court suggests, critical to the making of a proper decision, I question the correctness of the Court's conclusion that the person designated as the chief operating officer of a corporate entity is not in "control" of that corporation for *res judicata* purposes. Although the Court cites *Troy Lumber* for the proposition that "[t]he mere fact

Thus, I believe that the trial court correctly granted summary judgment in favor of both Defendants and against both Plaintiffs and respectfully dissent from the Court's determination that the necessary "identity of parties" between Mr. Williams and WHG needed to support an affirmance of the trial court's order in its entirety did not exist. In addition, I do not believe, given my conclusion that we should affirm the trial court's decision on *res judicata* grounds, that we need to determine whether a similar result should be reached on the basis of collateral estoppel principles. I do, however, concur in the Court's discussion of the "identity of claims" component of the required *res judicata* analysis, in the Court's determination that the necessary "identity of parties" exists between Ms. Peabody and Peabody Home Improvements, and in the Court's decision to affirm the trial court's determination that Mr. Williams' claims should be dismissed on *res judicata* grounds. As a result, I concur in the Court's opinion in part and dissent in part.

---

that one is a shareholder or officer of a corporation is not sufficient to establish privity for purposes of *res judicata* between the shareholder or officer and the corporation," I do not believe that *Troy Lumber*, when read in context, supports the Court's conclusion with respect to the "control" issue. In fact, the Supreme Court held in *Troy Lumber* that the corporate officer involved in that case did, in fact, control litigation brought by the corporation and found *res judicata* principles inapplicable in that case for an entirely different reason. However, given my conclusion that the necessary "identity of parties" exists based on other considerations, I express no opinion concerning the extent, if any, to which the record shows that Mr. Williams sufficiently controlled WHF for *res judicata* purposes.