Lancaster v. Harold K. Jordan & Co., 2014 NCBC 22.

STATE OF NORTH CAROLINA

COUNTY OF NEW HANOVER

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
08 CVS 883

JULIE LANCASTER and BRANNON
LANCASTER,

                Plaintiffs

v.

HAROLD K. JORDAN AND CO., INC.
WITHERS & RAVENEL, INC., ARTHUR R.
COGSWELL, and LIGHTHOUSE
ENGINEERING, PA,

                Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)

**OPINION AND ORDER
ON MOTION FOR
SUMMARY JUDGMENT**

THIS CAUSE, designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Chief Special Superior Court Judge for Complex Business Cases, comes before the court upon Defendant Harold K. Jordan and Co., Inc.'s Motion for Summary Judgment Based Upon *Res Judicata* and Collateral Estoppel ("Motion"), pursuant to Rule 56 of the North Carolina Rules of Civil Procedure ("Rule(s)"); and

THE COURT, after reviewing the Motion, briefs in support of and in opposition to the Motion, arguments of counsel and other appropriate matters of record, CONCLUDES that the Motion should be GRANTED, for the reasons stated herein.

*Shipman & Wright, L.L.P., by Gary K. Shipman, Esq. and Stubbs & Perdue, P.A., by Matthew W. Buckmiller, Esq. for Plaintiffs Julie and Brannon Lancaster.*

*Hedrick, Gardner, Kincheloe & Garofalo, L.L.P. by Thomas M. Buckley, Esq. and Bugg & Wolf, P.A., by William J. Wolf, Esq. for Defendant Harold K. Jordan and Co., Inc.*

Jolly, Judge.

## PROCEDURAL HISTORY

[1]  On February 26, 2008, Plaintiffs Julie Lancaster and Brannon Lancaster filed a Complaint against Defendants Harold K. Jordan and Co., Inc. ("HKJ"), Withers & Ravenel, Inc. ("W&R"), Arthur R. Cogswell ("Cogswell") and Lighthouse Engineering, P.A ("Lighthouse").  Plaintiffs' action was designated as civil action Number 08 CVS 883 by the Clerk of Superior Court of New Hanover County.

[2]  On December 15, 2009, Plaintiffs filed an Amended Complaint. In the Amended Complaint, Plaintiffs allege the following claims for relief ("Claim(s)"): First Claim for Relief (Fraud – Defendant HK Jordan); Second Claim for Relief (Unfair and Deceptive Trade Practices – HKJ); Third Claim for Relief (Negligent Misrepresentation – Defendants HK Jordan, Cogswell, W&R); Fourth Claim for Relief (Negligence – Defendants HK Jordan and Cogswell); Fifth Claim for Relief (Breach of Contract – Defendant W&R).

[3]  Plaintiffs subsequently filed voluntary dismissals as to W&R, Cogswell, and Lighthouse.[1]  Consequently, HKJ is the only remaining Defendant in this action.

[4]  On April 25, 2013, Defendant HKJ filed the Motion, seeking Summary Judgment as to counts I through IV, pursuant to Rule 56.

---

[1] Notice of Voluntary Dismissal with Prejudice as to Pls.' Claims Against Def. Arthur R. Cogswell (May 26, 2011); Notice of Voluntary Dismissal with Prejudice as to Pls.' Claims Against Defendant Withers & Ravenel, Inc. (May 1, 2012); Notice of Voluntary Dismissal, Without Prejudice as to Pls.' Claims Against Lighthouse Engineering, P.A. (Aug. 11, 2008).

[5]     The Motion has been fully briefed and argued and is ripe for determination.

FACTUAL BACKGROUND

Among other things, the Amended Complaint alleges:

[6]     Defendant HKJ is a North Carolina corporation with a place of business in New Hanover County, North Carolina.[2]

[7]     In 1997, Plaintiffs purchased land located in the Town of Leland in Brunswick County, North Carolina ("Subject Property").  The purchase was financed in part by Plaintiffs' execution of a promissory note and deed of trust to secure a loan from Coastal Federal Bank, with the balance coming from Plaintiffs' personal funds.[3]

[8]     In 2003, Plaintiffs formed Village Landing, LLC ("Village Landing"), a North Carolina Limited Liability Company.  Plaintiffs at all times were Village Landing's sole member-managers.[4]  Plaintiffs then transferred the Subject Property to Village Landing by quitclaim deed.  Plaintiffs remained personally responsible for the promissory note and debt and deed of trust to Coastal Federal Bank.[5]  At all times relevant to this action, Village Landing was only able to borrow money with the personal guarantee of Plaintiffs.[6]

[9]     In 2005, Plaintiffs met with HKJ regarding the possibility of constructing apartments on the Subject Property.  HKJ referred Plaintiffs to Cogswell, an architect in Chapel Hill, North Carolina.[7]  Plaintiffs then decided that they wanted to construct and

---

[2] Am. Compl. ¶ 2.
[3] *Id.* ¶ 6.
[4] Ex. AAA026 to Wiggins Aff. ("Arbitration Transcript") at 581; *see also* Compl. ¶ 10, Am. Compl. ¶¶ 7-8.
[5] Am. Compl. ¶ 7.
[6] *Id.* ¶ 8.
[7] *Id.* ¶¶ 12-13.

sell townhomes as opposed to managing apartments.[8]  Under the Town of Leland's

Residential Building Code ("Code"), the requirements for townhouse construction

differed from those applicable to apartment or condominium construction.[9]  Unlike

townhouses, condominiums are not constructed under the Code.[10]  HKJ understood

that it was tasked with building townhouses under the Code.[11]

[10]    Plaintiffs sought and obtained additional financing from Cooperative Bank

in Wilmington, North Carolina.  Plaintiffs and Lumina Mortgage Company, an affiliate of

Cooperative Bank, both felt that a townhouse project was a better option than the

alternatives, and both parties operated under the assumption that townhomes would be

built.[12]

[11]    In 2005, Plaintiffs acquired additional property adjoining the Subject

Property, which was necessary for the development of the Subject Property as a

townhouse community.[13]

[12]    In February 2006, HKJ prepared and submitted to Plaintiffs a "proposal for

the construction of 60 condos."  When Plaintiffs inquired as to the use of the term

"condos" rather than "townhouses," they were informed by HKJ that the difference was

immaterial.[14]

[13]    Plaintiffs and HKJ then formed Shady Grove Development, Inc. ("Shady

Grove") with the goal of proceeding with the project as a joint venture, on the condition

---

[8] *Id.* ¶ 16.
[9] *Id.* ¶ 18.
[10] *Id.* ¶ 51, 53.
[11] *Id.* ¶ 58.
[12] *Id.* ¶ 20.
[13] *Id.* ¶ 28.
[14] *Id.* ¶ 41.

that Harold K. Jordan, President of HKJ ("Jordan"),[15] would not be personally liable for any debts incurred. When Plaintiffs and HKJ were made aware of Cooperative Bank's requirement that all shareholders of the developing entity submit personal financial information and personally guarantee any loan, Plaintiffs and Jordan abandoned the joint venture. [16]

[14] Shady Grove and HKJ were the only signatories to the original development contract. No written contract ever existed between Village Landing and HKJ, despite Plaintiffs' request that a new contract be prepared.[17]

[15] In reliance on HKJ's representations that townhouses would be constructed, Plaintiffs accepted Cooperative Bank's commitment letters to fund the project, thereby personally guaranteeing the payment of Village Landing's debt for the construction and development of the project.[18]

[16] When HKJ provided project plans to the Town of Leland in June and July 2006, HKJ was informed that the plans prepared by Cogswell did not qualify for townhouse construction under the Residential Building Code and that the project had not been approved by the Town.[19] HKJ failed to notify Plaintiffs about this issue and began construction regardless.[20]

[17] In August 2006, prior to beginning vertical construction, HKJ submitted change orders to Julie Lancaster and Cooperative Bank providing for additional expenses "because units are built as townhomes and they were priced as condos."[21]

---

[15] Arb. Tr. at 121.
[16] Am. Compl. ¶¶ 33-35, 46-47.
[17] *Id.* ¶¶ 42, 48.
[18] *Id.* ¶ 67-68.
[19] *Id.* ¶¶ 79-81.
[20] *Id.* ¶¶ 82, 84.
[21] *Id.* ¶¶ 86-87.

[18]    While construction was ongoing, the Town of Leland Building Inspector "repeatedly informed" HKJ that HKJ was not building townhouses under the Residential Building Code.  HKJ did not notify Plaintiffs of the Building Inspector's statements.[22]

[19]    Despite HKJ's knowledge that the units were sold by realtors marketing the projects as townhomes and HKJ's assurances that the units would be ready for occupancy by November 2006, HKJ did not inform Plaintiffs until December 2006 that the Town of Leland would not issue certificates of occupancy for the units as townhomes.[23]  Because HKJ constructed condominiums rather than townhouses, prospective purchasers were unable to obtain financing.[24]

[20]    If the units had been constructed as townhomes, the units would have been sold, and additional loans would have been repaid.  The sale would also have generated a profit, enabling Plaintiffs to begin the next phase of the project.  Instead, Plaintiff Julie Lancaster was forced to cash out her Investment Retirement Account in order to fund required interest payments to Cooperative Bank.[25]

Prior Arbitration Action[26]

[21]    In July 2007, HKJ filed an action in Wake County Superior Court against Shady Grove and Village Landing, alleging breach of the construction contract.[27] Shady Grove and Village Landing filed an Answer and Counterclaim, which sought to submit

---

[22] *Id.* ¶¶ 93-94.
[23] *Id.* ¶¶ 95-97.
[24] *Id.* ¶ 99.
[25] *Id.* ¶¶ 103-110.
[26] It is not proper for a trial court to make findings of fact in determining a Rule 56 motion.  However, it is appropriate for a Rule 56 order to reflect material facts that the court concludes exist and are not disputed, and which support the legal conclusion with regard to summary judgment. *Hyde Ins. Agency v. Dixie Leasing Corp.*, 26 N.C. App. 138, 142 (1975).  As reflected in this Opinion and Order, the court here concludes that undisputed facts of record relative to the defenses of *res judicata* and collateral estoppel require that the Motion be granted.
[27] Ex. W001 to Wiggins Aff.

HKJ's claims against Shady Grove alone to arbitration based on an arbitration clause in the written contract between Shady Grove and HKJ.[28]

[22]    HKJ later successfully moved to compel arbitration as to all pending claims between HKJ and Village Landing as well, based on a ruling by the Honorable Donald W. Stephens, Wake County Senior Resident Superior Court Judge, that the contract at issue was effectively assigned from Shady Grove to Village Landing.[29] In his November 19, 2007 Order Compelling Arbitration, Judge Stephens ordered HKJ, Shady Grove and Village Landing to "arbitrate all their pending claims in this action," including "*all* counterclaims of Village Landing"[30] in the already pending arbitration[31] between HKJ and Shady Grove.

[23]    Village Landing's arbitration counterclaims were substantially similar if not substantively identical to the Claims asserted in Plaintiffs' Amended Complaint in the instant action.[32] Village Landing alleged that HKJ "failed to construct townhouse units on the subject property"[33] and that HKJ caused Village Landing "great financial harm and damage" as a result.[34]

[24]    The resulting arbitration hearing ("Arbitration") took place in March 2008.[35] Plaintiffs were not named parties to the Arbitration Action in their individual capacities, as they are in this matter, but were present and testified at the Arbitration.[36] Plaintiffs, though Village Landing, also called an additional 16 witnesses to testify at the

---

[28] Ex. W002 to Wiggins Aff.; Pls.' Mem. Opp. Def. HKJ's Mot. Summ. J. ("Plaintiffs' Brief") at 2.
[29] Ex. A ("Order Compelling Arbitration") to Def. HKJ's Br. Supp. Mot. Summ. J. ("Defendants' Brief").
[30] Order Compelling Arb. at 3 (emphasis original).
[31] American Arbitration Association Case # 31 110 Y 00204 07 ("Arbitration Action").
[32] *See* Ex. D to Def.'s Br. ¶¶ 3-28 ("Arbitration Counterclaims").
[33] *Id.* ¶ 28.
[34] *Id.* ¶ 25.
[35] Pls.' Br. at 3; *see* Arb. Tr.
[36] Arb. Tr. at 3, 582, 636, 726, 754.

Arbitration.[37] The arbitrator rendered his judgment in April 2008, specifically finding, in

relevant part:

> Regarding the Townhome issue, there is a dispute in the testimony about whether these buildings actually do qualify as Townhomes under the Residential Building Code, but there is no evidence that [HKJ] deviated in any way from the drawings provided by [Village Landing's] architect. The only question is whether there is a conflict between the drawings and the Residential Building Code. As indicated above, there is a conflict in the testimony about that. But there is no evidence that Jordan was ever aware of this issue. This is especially true in light of the fact that the architect himself testified that there was no such conflict.
>
> The testimony of [Town of Leland Building Inspector] Timothy Evans does not establish, by the greater weight of the evidence, that [HKJ] was, or should have been, aware of any inconsistency between the drawings and the residential code. In fact there is no evidence at all that [HKJ] was ever aware that Mr. Evan's [sic] remarks had any significance.
>
> There are many other reasons why [Village Landing's] counterclaims should fail . . .
>
> This Award is in full settlement of all claims and counterclaims submitted to this Arbitration."[38]

[25] A Judgment confirming the Arbitration Award was entered in June 2008 by

the Honorable Michael R. Morgan, Wake County Resident Superior Court Judge.[39]

Village Landing's subsequent appeal of Judge Morgan's Judgment and Judge

Stephens's Order Compelling Arbitration was, according to Plaintiffs, "dismissed by the

Court of Appeals for unknown reasons."[40] A Petition to the Supreme Court of North

---

[37] *Id.* at 3, 636.
[38] Ex. F to Def.'s Br. ("Arbitration Award").
[39] Ex. G to Def.'s Br.
[40] Pls.' Br. at 4.  Notwithstanding Plaintiffs' counsel's assertion that Plaintiffs were unaware of the reason for the appeal's dismissal, the record reflects that the appeal was dismissed by the Court of Appeals because Village Landing failed to serve the record in a timely manner. *See* Ex. NCA002 to Wiggins Aff., Ex. NCA003 to Wiggins Aff., Ex. NCA004 to Wiggins Aff.

Carolina for Writ of Certiorari was denied,[41] bringing an end to the litigation between HKJ and Village Landing. Plaintiffs, in the meantime, had filed the Complaint in this action in their individual capacities less than 20 days prior to the March 2008 Arbitration.[42]

## DISCUSSION

[26]     The Motion seeks summary judgment in favor of HKJ under Rule 56. "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523 (2012) (quoting Rule 56(c)). An issue is "material" if its "resolution . . . is so essential that the party against whom it is resolved may not prevail." *McNair v. Boyette*, 282 N.C. 230, 235 (1972) (quotations omitted).

[27]     Summary judgment is generally appropriate in cases involving either "a claim or defense [that] is utterly baseless in fact" or "a question of law on the indisputable facts" that "can be appropriately decided without full exposure of trial." *Kessing v. Nat'l Mortg. Corp.*, 278 N.C. 523, 533 (1971). In considering a Rule 56 motion, this court must view the evidence "in the light most favorable to the nonmoving party." *Trivette v. Yount*, 366 N.C. 303, 312 (2012) (citing *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 470 (2004)). The moving party bears "the burden of clearly establishing lack of a triable issue" to the trial court. *N.C. Farm Bureau Mut. Ins. Co. v. Sadler*, 365 N.C. 178, 182 (2011) (quoting *N.C. Nat'l Bank v. Gillespie*, 291 N.C. 303, 310 (1976)).

---

[41] Ex. NCA010 to Wiggins Aff.
[42] Pls.' Br. at 12; *see also* Compl., Arb. Tr.

The moving party may meet this burden by "proving an essential element of the opposing party's claim does not exist, cannot be proven at trial, or would be barred by an affirmative defense." *Variety Wholesalers, Inc.,* 365 N.C. at 523 (quoting *Dobson v. Harris*, 352 N.C. 77, 83 (2000)). Evidence that may be considered by this court under Rule 56 includes "admissions in the pleadings, depositions on file, answers to . . . interrogatories, admissions on file . . . , affidavits, and any other material which would be admissible in evidence or of which judicial notice may properly be taken." *Kessing,* 278 N.C. at 533.

[28]     HKJ contends that in the instant action Plaintiffs are seeking to relitigate claims previously tried and decided in the Arbitration Action but are barred from doing so under the doctrine of *res judicata*, or claim preclusion. HKJ similarly contends that the doctrine of collateral estoppel, or issue preclusion, also applies and bars relitigation of issues decided in the Arbitration Award. This court reaches its decision on the Motion based solely on its application of the doctrine of collateral estoppel, and it therefore makes no ruling on whether Plaintiffs' Claims are also barred by *res judicata* even though the doctrinal analyses are similar and occasionally overlap.

[29]     "Collateral estoppel can be a basis for summary judgment" by foreclosing "relitigation of issues actually determined in a previous action." *Beckwith v. Llewellyn*, 326 N.C. 569, 573 (1990) (citations omitted), *reh'g denied*, 327 N.C. 146 (1990). The doctrine "operates as an absolute bar to further litigation of the issue previously decided." *Murakami v. Wilmington Star News, Inc.*, 137 N.C. App. 357, 359 (2000) (citations omitted). North Carolina case law typically spells out the doctrine's core requirements in the form of two slightly different four-factor tests. *See, e.g., Turner v.*

*Hammocks Beach Corp.*, 363 N.C. 555, 559 (2009), *Thomas M. McInnis & Assocs. v. Hall*, 318 N.C. 421, 429-30 (1986), *King v. Grindstaff*, 284 N.C. 348 (1973). The substantive requirements are consistent regardless of form, and are most clearly parsed as follows: (a) identity of parties, (b) prior final judgment on the merits, (c) identity of issues, (d) actual litigation of issues, (e) actual determination of issues in the judgment and (f) the determination's necessity to the judgment. *See id.* The court will address each of these factors, giving special attention to elements (a), (c) and (d), which the parties most vigorously contest.

<u>Identity of Parties</u>

[30]     In analyzing whether collateral estoppel applies, courts traditionally begin with an inquiry into "whether the parties in [the present] suit[] and those in the former . . . litigation are the same, or stand in privity to the parties in the former litigation." *King*, 284 N.C. at 357. In 1986, the Supreme Court of North Carolina, recognizing "[t]he modern trend in both federal and state courts," abandoned this requirement when a party seeks to use collateral estoppel defensively. *McInnis*, 318 N.C. at 421. The *McInnis* court's ruling contemplated a scenario involving the same plaintiff suing different defendants, or what some courts refer to as "non-mutual defensive collateral estoppel." *See, e.g., Bendet v. Sandoz Pharms. Corp.*, 308 F.3d 907, 910-11 (8th Cir. 2002) ("Nonmutual defensive collateral estoppel works to prevent a plaintiff from relitigating an issue the plaintiff has previously litigated unsuccessfully in another action against a different defendant." (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.4 (1979)). The court is not aware of any North Carolina precedent addressing the attempted use of nonmutual collateral estoppel by the same defendant against nominally different

plaintiffs, as HKJ seeks in this matter. Therefore, the court will engage in the full identity analysis as traditionally required under the doctrine.

[31]    As a preliminary matter, the court notes that *res judicata* and collateral estoppel are "companion doctrines," *Bockweg v. Anderson*, 333 N.C. 486, 491 (1993), that traditionally have shared the identity requirement. As such, the analysis involved is identical regardless of which of the two estoppel doctrines is being asserted. *See Carolina Power & Light Co. v. Merrimack Mut. Fire Ins. Co.*, 238 N.C. 679, 692 (1953) (discussing identity of parties "in order to establish res judicata *or* the equitable principle of estoppel" (emphasis added)). The parties' memoranda on the Motion implicitly recognize this,[43] and the court is aware of no precedent to the contrary. Therefore, the court deems it appropriate to rely on case law discussing identity of parties in the context of both *res judicata* and collateral estoppel analyses.

[32]    The Parties vigorously contest whether this matter and the Arbitration Action present an identity of parties plaintiff. It is clear that Plaintiffs were not nominal parties to the Arbitration Action. However, HKJ contends that Plaintiffs were either (a) substantively parties to the Arbitration Action in function, even if not in form; or (b) were in privity with Village Landing, thereby satisfying an exception to the identity element.[44]

[33]    In support of its argument that Plaintiffs in substance were parties to the Arbitration Action, HKJ asserts that Village Landing did not observe corporate formalities and was Plaintiffs' mere alter ego.[45] HKJ relies, among other things, upon

---

[43] *See* Pls.' Br. at 21, Def.'s Br. at 30-31.
[44] *See* Def.'s Br. at 20-24.
[45] Def.'s Br. at 25.

Julie Lancaster's admission at the Arbitration that Plaintiffs and Village Landing were "one and the same."[46]

[34] In support of its argument that Plaintiffs and Village Landing were in privity for purposes of the Arbitration Action, the Motion naturally poses the question of whether a closely held corporation and its shareholders are privies under these circumstances. Plaintiffs correctly cite to *Troy Lumber v. Hunt*, 251 N.C. 624, 627 (1960), for the proposition that privity with a corporation is not established solely by one's position as a corporate officer or shareholder. Rather, as our Supreme Court has noted, privity generally involves "a person so identified in interest with another that he represents the same legal right," though a universal definition of the word has "proven to be elusive." *Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 36 (2004) (quotations and citations omitted).

## The *Lassiter* Exception

[35] Taken as a whole, the North Carolina case law is inconclusive as to whether the facts in this matter unequivocally support a conclusion that Plaintiffs in substance were parties to the Arbitration Action or were in privity with Village Landing. As such, this court declines to reach a conclusion on either proposition. Instead, the court relies on the related "*Lassiter* exception" because it most clearly resolves this issue. *See Thompson v. Lassiter*, 246 N.C. 34 (1957).

[36] In *Lassiter*, the Supreme Court recognized a "well established exception" to the "general rule" that an identity of parties is necessary to sustain a *res judicata* defense:

---

[46] Def.'s Br. at 22 (quoting Arb. Tr. at 627).

A person who is not a party but who controls an action, individually or in cooperation with others, is bound by the adjudications of litigated matters as if he were a party if he has a proprietary interest or financial interest in the judgment or in the determination of a question of fact or a question of law with reference to the same subject matter, or transactions; if the other party has notice of his participation, the other party is equally bound.

*Id.* at 39 (quoting *Light Co. v. Insurance Co.*, 238 N.C. 679, 692 (1953)) (emphasis omitted). In substance, the *Lassiter* exception requires that four parameters be met: (a) control of both the original and present lawsuit, (b) a proprietary interest or financial interest in the prior judgment, (c) an interest in the determination of a question of fact or a question of law regarding the same subject matter or transactions and (d) notice of participation. In the context of the instant action, the Court of Appeals' discussion of the *Lassiter* analysis in *Williams v. Peabody*, 217 N.C. App. 1 (2011), is material.

*Plaintiffs' Control of the Original Lawsuit*

[37]    Control is the "threshold requirement of the exception to the rule requiring privity of identities." *Peabody*, 217 N.C. App. at 10 (citing *Lassiter*, 246 N.C. at 39). While there is no bright line test or clear definition as to what constitutes a party's "control" of a prior proceeding, the *Peabody* court's discussion of several reported cases involving the control element is instructive.  For example, *Smoky Mountain Enters., Inc. v. Rose*, 283 N.C. 373 (1973), involved a breach of contract suit instituted by a corporate plaintiff after summary judgment was rendered individually against the president of the corporate plaintiff in a prior action. In holding that the corporate plaintiff was bound by the judgment in the prior suit under *res judicata*, the Supreme Court emphasized that "[the individual plaintiff] is the president and owns all the stock of [the corporate plaintiff]," and that the individual plaintiff was "personally in control" of both the prior action in his individual capacity and the subsequent corporate action. *Id.* at 377-78.

[38]     On the other hand, in *Troy Lumber*, 251 N.C. 624, the court declined to find that a controlling stockholder (who was also the president and chairman of the subject corporation's board of directors) and a corporation were in privity. This holding was based on the court's finding that "[the corporation] has other shareholders than [the individual]," the lack of any "allegation . . . that these other shareholders had anything to do with [the individual's] [prior] action for damages for personal injuries," and the individual plaintiff's mere "contingent derivative right of succession of property interest" from the corporation with regard to the corporate action. *Id.* at 627-28.

[39]     The contrasting outcomes in *Smoky Mountain Enterprises* and *Troy Lumber* nonetheless are consistent. As the *Peabody* court observed, a "logical extension" from *Smoky Mountain Enterprises* and *Troy Lumber* taken together is the importance of shareholder makeup in assessing the *Lassiter* control element. *See Peabody*, 217 N.C. App. at 12-13. The court found in *Peabody* that "suspension" of the privity requirement was not warranted because the evidence of record in that matter "show[ed] at most, that [the individual] was [the corporation's] chief operating officer," and it thus distinguished *Peabody* from *Smoky Mountain Enterprises*. *Id*. In reaching that conclusion, the *Peabody* court emphasized the lack of any evidence showing that the individual was a "sole or controlling shareholder" or was otherwise "in control of [the corporation], and thereby, in control of [corporation's] [prior] action against Defendants." *Id.* at 12. Thus, the controlling jurisprudence on this issue stands strongly and directly for the proposition that the control element of the *Lassiter* exception is met when a corporation is dominated by a single party or entity or is otherwise the alter ego of that party or entity.

[40]    The evidence of record in this matter establishes that Plaintiffs, husband and wife, were the sole member-managers of Village Landing, a party to the Arbitration Action. Plaintiffs' brazen claim that they "had no control over the arbitration proceeding"[47] is remarkable in light of the fact that they called a total of 18 witnesses, including themselves, to testify at the Arbitration.[48] Given Plaintiffs' sole ownership and management of Village Landing, it is difficult to envision how anyone *other than* Plaintiffs could possibly have "controlled" Village Landing at the Arbitration. Plaintiff Julie Lancaster herself testified at the Arbitration that Village Landing and the Lancasters were "one and the same."[49] Under the Supreme Court of North Carolina's analysis in *Smoky Mountain Enterprises*, the control element of the *Lassiter* exception is plainly shown by the evidence of record in this matter.

*Plaintiffs' Proprietary Interest in the Prior Judgment*

[41]    Similarly, as the sole member-managers of Village Landing, Plaintiffs had a clear proprietary interest in the Arbitration Action. Village Landing was a respondent and counterclaimant in the Arbitration Action. HKJ sought substantial damages from Village Landing, and eventually recovered over $800,000.[50] Village Landing's counterclaims sought damages in excess of $1 million; it was ultimately awarded less than $12,000.[51] Village Landing was essentially a pass through entity, and Plaintiffs

---

[47] Pls.' Br. at 19.
[48] Arb. Tr. at 3, 636.
[49] Arb. Tr. at 627.
[50] Def.'s Br. at 7.
[51] Ex. E to Def.'s Br.; Arb. Award.

were financially intertwined with Village Landing.[52] Consequently, Plaintiffs had an obvious, clear and direct financial interest in any judgment affecting Village Landing.

*Plaintiffs' Interest in the Determination of Questions of Fact or Law*

[42]    Moreover, Plaintiffs had a clear interest in the "determination of a question of fact or a question of law with reference to the same subject matter[] or transactions." *Lassiter*, 246 N.C. at 39. At the very core of Plaintiffs' Claims against HKJ in this matter is the allegation that HKJ either negligently or purposely misled Plaintiffs in constructing "condominiums, rather than townhouses."[53] This was the precise issue that Village Landing litigated extensively against HKJ in the Arbitration Action, an alleged misrepresentation that Plaintiffs' counsel contended was the proximate cause of millions of dollars in losses.[54] Not only did Plaintiffs have an "interest" in the Arbitrator's determination on this issue, it was central to their LLC's entire case against HKJ in the Arbitration Action – as it is in their individual action here. As such, this element of the *Lassiter* exception is plainly met.

*Notice*

[43]    *Lassiter* requires that "the other party" have "notice of [the person's] participation" in order to be "equally bound." *Lassiter,* 246 N.C. at 39. This language is slightly ambiguous on its face, but is easier to discern when taking into account that

---

[52] *See* Arb. Tr. at 577 (Plaintiffs treated money put into Village Landing as loans from them to Village Landing. Village Landing was treated as a disregarded entity for tax purposes and was listed on Plaintiffs' tax returns).

[53] Pls.' Br. at 9.

[54] Arb. Tr. at 60 (Opening Statement of Gary K. Shipman, Esq.) ("As we sit here today, the evidence will show that the owners' losses exceed 2 million dollars all because Jordan did not do what he was obligated to do, build townhouses under the Residential Building Code; all because Jordan failed to disclose information that they had an affirmative obligation to disclose; all because Jordan made an affirmative misrepresentation that they were constructing townhomes when they knew that they were constructing condos.").

cases such as *Lassiter* and *Smoky Mountain Enterprises* featured a chronological posture opposite to that involved here. Specifically, both cases dealt with corporate suits instituted after individual suits, rather than the opposite.

[44]    In *Smoky Mountain Enterprises*, the court dispatched with this element by noting that the individual involved was the corporation's president, obviously had knowledge of his own lawsuit, and that "notice to the president is notice to the corporation." 283 N.C. at 377. The *Peabody* court, in conducting the *Lassiter* analysis under facts similar to this case chronologically, made no mention of the notice requirement, suggesting that it may not be required under these facts. *See Peabody*, 217 N.C. App. at 9-11 (assessing the application of the *Lassiter* exception to Peabody by virtue of her ownership of Peabody's Home Improvements, Inc., a party to a prior lawsuit). Regardless, in this case, Plaintiffs' knowledge of the prior litigation is obvious, and thus the notice element is either met or not applicable and does not merit further consideration.

The "Separate and Distinct" Nature of Plaintiffs' Claims

[45]    Plaintiffs' argument with regard to the identity requirement appears to rest in part on the misguided notion that this element cannot be met because their Claims in this case are "separate and distinct" from Village Landing's Arbitration Counterclaims.[55] Even assuming *arguendo* that Plaintiffs' Claims are in fact separate and distinct from their LLC's Arbitration Counterclaims, that fact would be largely irrelevant to the identity analysis (and indeed largely irrelevant to the doctrine of collateral estoppel), which

---

[55] *See, e.g,* Pls.' Br. at 17 ("No North Carolina court has ever found in situations similar to this one that the Lancasters are in privity with Village Landing for claims based on the Lancasters' "separate and distinct" injury.").

merely requires an examination of whether there is an identity of parties, privity between parties, or an applicable exception. Plaintiffs cite to *Cline v. McMullen*, 148 N.C. App 147 (2001), for the proposition that control of prior litigation "[does] not establish privity in and of itself."[56] This is uncontested – as outlined above, Plaintiffs satisfy the identity requirement because they controlled the prior action *and* had a proprietary interest in that action as well as an interest in the determination of issues at stake in that action.

[46]    Plaintiffs incorrectly characterize the *Lassiter* rule as mere "dicta from *Cline*" and attempt to distinguish *Lassiter* and *Cline* on the grounds that the former involved a father-son relationship and the latter a principal-agent relationship.[57] This argument must fail in light of the *Troy Lumber* court's approval of the *Lassiter* decision based on the fact that, in *Lassiter*, "the father as guardian *ad litem* had control over the defense . . ., could cross-examine opposing witnesses, and offer witnesses of his own," 251 N.C. at 628, as well as the *Peabody* court's application of the rule. Therefore, the operative factor in *Lassiter* was not the father-son relationship itself, but rather the father's control over the litigation as a result of that relationship.

[47]    It is clear that Plaintiffs controlled the Arbitration in behalf of Village Landing and that they had both a proprietary interest in the Arbitration Action as well as an interest in the determination of relevant facts and law in that action. Therefore, under the *Lassiter* rule, an identity of parties existed between Plaintiffs and Village Landing for purposes of collateral estoppel.  Accordingly, the court's analysis proceeds to the doctrine's next requirement.

---

[56] *Id.*
[57] *Id.* at 17-18.

## Prior Final Judgment on the Merits

[48]     Proper application of collateral estoppel requires that "the earlier action resulted in a final judgment on the merits." *Bee Tree Missionary Baptist Church v. McNeil*, 153 N.C. App. 797, 799 (2002). Plaintiffs concede that "the Arbitration Award was a Final Judgment on the Merits as to claims by/against Defendant HKJ, Village Landing, and Shady Grove."[58] The Arbitration Award was confirmed in its entirety in Wake County Superior Court by Judge Morgan.[59] It is clear that a confirmed Arbitration Award constitutes a final judgment on the merits for purposes of collateral estoppel. *See, e.g., Murakami*, 137 N.C. App. 357, *disc. review denied*, 352 N.C. 148. Therefore, this element of the collateral estoppel analysis is met, and the court proceeds to the doctrine's next requirement.

## Identity of Issue(s)

[49]     The core feature that differentiates collateral estoppel from *res judicata* is its application to issues rather than claims. That is, collateral estoppel functions to bar relitigation of an identical *issue* previously litigated that meets the doctrine's other requirements, rather than a previously litigated claim. *See, e.g., McInnis*, 318 N.C. at 429. In *King*, our Supreme Court noted that "[p]arties and parties in privity with them -- even in *unrelated causes of action* -- are precluded from retrying fully litigated issues that were decided in any prior determination and were necessary to the prior determination." 284 N.C. at 356 (emphasis added).

[50]     As briefly noted above, at the very heart of Plaintiffs' Claims against HKJ in this matter is the allegation that HKJ negligently or purposely misled Plaintiffs in

---

[58] *Id.* at 12.
[59] Ex. W018 to Wiggins Aff.

constructing "condominiums, rather than townhouses."[60] This exact issue was extensively litigated during the Arbitration.[61] Here, as in their arguments concerning identity of parties, Plaintiffs rely repeatedly on the allegedly "separate and distinct" nature of their Claims in this case. Neither the word "issue" nor any remote synonym is to be found anywhere in the portion of Plaintiffs' Brief in Opposition discussing the identity of issues element of collateral estoppel.[62] Yet our courts have repeatedly held that "collateral estoppel precludes the subsequent adjudication of a previously determined issue, *even if the subsequent action is based on an entirely different claim*." *Whitacre*, 358 N.C. at 15 (citing *Hales v. N.C. Ins. Guar. Ass'n*, 337 N.C. 329 (1994)) (emphasis added).

[51]    Plaintiffs allege that "HKJ made false representations of material fact, namely that it was building town homes"[63]. Plaintiffs then argue that HKJ owed Plaintiffs a duty separate from the duty it owed Village Landing, citing *Allen v. Ferrera*, 141 N.C. App. 284 (2000), for the proposition that a "special duty" is created when a defendant induces a plaintiff to personally guarantee a corporate debt due to misrepresentation.[64] This argument is ostensibly an attempt by Plaintiffs to allege the existence of an issue isolated from the already determined issue of whether HKJ made misrepresentations to Village Landing. In substance, Plaintiffs appear to argue that while the propriety of HKJ's conduct as to Village Landing was determined in the Arbitration Action, the propriety of HKJ's conduct as to Plaintiffs individually is an issue unique to this action.

---

[60] Pls.' Br. at 9.
[61] *See, e.g.,* Arb. Tr. at 836-856 (Closing Statement of Gary K. Shipman), Arb. Award.
[62] *See* Pls.' Br. at 21. In fact, Plaintiffs' arguments on the matter are preceded by a subheading titled: "The Lancasters' *claims* are not identical to those in the Arbitration and were not necessarily determined in the Arbitration." *Id.* (emphasis added).
[63] *Id.*
[64] *Id.*

[52]     Plaintiffs' argument is fatally flawed because it is logically impossible to envision a scenario where HKJ could make misrepresentations to Plaintiffs but not their wholly owned and controlled LLC, or vice-versa. Even assuming that Village Landing was not Plaintiffs' mere alter ego, the fact that HKJ's representations caused Plaintiffs to take actions in their individual capacity is irrelevant. Even if HKJ owed Plaintiffs a separate duty imposed by operation of law, the presence of that duty is not relevant unless some scenario exists whereby HKJ could have simultaneously violated that duty but not its contractual duties to Village Landing. Yet the basis for HKJ's alleged violation of that separate, special duty remains the allegation that "HKJ made false representations of material fact, namely that it was building town homes."[65]

[53]     Plaintiffs were Village Landing's sole member-managers and HKJ could not possibly have engaged in disparate or distinct conduct with respect to Plaintiffs and Village Landing. Therefore, because the Arbitration Award determined the propriety of HKJ's conduct with respect to Village Landing, it also did so as to Plaintiffs.

[54]     The court concludes that the same issue that was litigated in the Arbitration Action underlies Plaintiff's Claims here. Therefore, an identity of issues exists, and the court proceeds to the collateral estoppel doctrine's next requirement.

<u>Actual Litigation of Issue(s)</u>

[55]     The collateral estoppel doctrine requires that the issue in question must have been "actually litigated" in the prior proceeding. *McInnis*, 318 N.C. at 429. Village Landing's Arbitration Counterclaims and the Arbitration Transcript together make it abundantly clear that HKJ's alleged misrepresentation was raised and litigated

---

[65] Pls.' Br. at 21.

extensively in the Arbitration Action.[66] The controlling case law is clear that litigation of issues in an arbitration action satisfies the "actual litigation" prong of the collateral estoppel doctrine. *See Murakami*, 137 N.C. App. at 360; *see also Rodgers Builders, Inc. v. McQueen*, 76 N.C. App. 16, 29 (1985) ("Although James McQueen was not named as a party to the arbitration, it is clear that . . . he was an active and controlling participant in the arbitration. He thus is bound by the judgment entered on the arbitration award just as if he were a named party to the proceeding."). Therefore, the court proceeds to the next element.

### Actual Determination of Issue(s)

[56]     Collateral estoppel requires that the issue in question "must have been determined by adjudication in the prior action." *King*, 284 N.C. at 359 (quoting 1B Moore's Federal Practice § 0.443[4] (2d Ed. 1965)). In analyzing whether an issue was actually determined, courts may look to the judgment as well as pleadings and evidence from the prior action. *Id.* Here, as in *Murakami*, 137 N.C. App. 357, the Arbitration Award on its own is enough to support a finding that the issue in question was actually determined by the arbitrator. The Arbitration Award plainly spells out the arbitrator's findings, in which he specifically absolved HKJ of any responsibility on the issues underlying Plaintiffs' Claims here. Therefore, the court finds that this element is met and proceeds to the final element of the collateral estoppel analysis.

### Necessity and Materiality to the Judgment

[57]     Proper application of collateral estoppel requires that the determination made in the prior judgment "must have been necessary and essential to the resulting

---

[66] *See* Ex. D. to Def.'s Br., Arb. Tr.

judgment." *King*, 284 N.C. at 358 (citing 1B Moore's Federal Practice § 0.443[4] (2d Ed. 1965)). The Court of Appeals' decision in *Murakami* provides a useful example of this requirement's application to an arbitration award. There, the court found that the determination was necessary because the "purpose of the proceeding" was to determine damages. *Murakami*, 137 N.C. App. at 361. As discussed earlier, Village Landing's Arbitration Counterclaims rested almost entirely on the underlying allegation that HKJ either negligently or purposely misled Plaintiffs and their LLC. Determining whether HKJ was guilty of such misrepresentations was absolutely essential to the Arbitration Action's "purpose" and the rendering of the Arbitration Award. Therefore, the final requirement of collateral estoppel is met.

CONCLUSION

[58]    The undisputed evidence of record establishes that (a) Plaintiffs are the same party as Village Landing for purposes of collateral estoppel, (b) Plaintiffs raised and litigated the same issue that underlies this case during the Arbitration and (c) the Arbitrator issued a final judgment that actually determined the propriety of HKJ's conduct – a determination that was essential to the Arbitration Award. Therefore, Plaintiffs are collaterally estopped from relitigating the issue of whether HKJ made negligent or intentional misrepresentations during the construction process. Consequently, the court must consider whether the Arbitration Award's findings on that specific issue mandate summary judgment in favor of HKJ in this matter.

[59]    A Rule 56 motion presents the question of whether there is "lack of a triable issue," *N.C. Farm Bureau Mut. Ins. Co.*, 365 N.C. at 182 (internal quotations and citations omitted). This occurs when "an essential element of [a] party's claim does not

exist [or] cannot be proven at trial*." Variety Wholesalers, Inc.*, 365 N.C. at 520. As noted above, the allegation that HKJ made material misrepresentations during the construction process is a foundational element of Plaintiffs' Claims. Given that Plaintiffs are collaterally estopped from relitigating this issue and that the court is bound by the findings on this issue contained in the Arbitration Award, it is clear that Plaintiffs' Claims fail as a matter of law. Because there is no triable fact that would serve as a basis for liability against HKJ, summary judgment in favor of HKJ is appropriate in this action with regard to Plaintiff's Claims I-IV.

NOW THEREFORE, based upon the foregoing, it hereby is ORDERED that:

[60]    Defendant HKJ's Motion for Summary Judgment is GRANTED as to Plaintiffs' Claims I-IV, and said Claims are DISMISSED.

[61]    As Plaintiffs have previously filed voluntary dismissals against Lighthouse, W&A and Cogswell, and therefore no viable Claims remain in this matter, this civil action is DISMISSED.

[62]    Taxable costs of this action are assessed against Plaintiffs.

This the 5th day of June, 2014.